TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00211-CR






John Franklin Armstrong, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2002-009, HONORABLE FRED A. MOORE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant John Franklin Armstrong was charged with the offenses of aggravated
sexual assault (two counts) and aggravated kidnapping. A jury acquitted appellant of the aggravated
sexual assault charges but found him guilty of aggravated kidnapping and assessed punishment at
ten years' imprisonment and a $10,000 fine, both of which were probated. By four points of error,
appellant challenges the legal and factual sufficiency of the evidence to support his conviction and
complains of the trial court's admission of extraneous offense evidence. We overrule the points of
error and affirm the conviction.


BACKGROUND


 Appellant and the complainant, Janet Kay Armstrong, married in 1982. The couple
had two daughters together, both teenagers at the time of trial. In August 2001, Janet filed for
divorce and appellant moved out of their home. He initially moved in with his mother in Dickinson
County, but later moved to a resort RV park in Comal County to be closer to his daughters; there he
resided in a tent. Appellant also hoped to convince Janet to consider a reconciliation.

 About a month after he moved out, appellant returned to the couple's home while
Janet and their daughters were away and took Janet's wedding dress and some of her jewelry. 
Although he returned the items a few days later, Janet changed the locks on the doors to the house
following the incident.

 On October 3, Janet agreed to meet appellant at the RV park to discuss the divorce
and arrange for appellant's visits with his daughters. Janet arrived at the park at about 8:30 p.m. 
Janet testified at trial that when she arrived, she and appellant initially sat outside at a picnic table
and moved inside the tent shortly afterwards to flee from bugs. Appellant contended that Janet
immediately went into the tent upon her arrival. According to Janet, appellant tried to persuade her
not to follow through with the divorce, as he had on several previous occasions. When Janet
informed appellant that she would not change her mind about the divorce, he became agitated. He
then pulled out a gun from behind him, "unholstered it," "chambered a round," and told Janet that
"he guesse[d] the children were going to be orphans." When Janet asked appellant if he was going
to kill her, he responded, "If I can't have you no one else will." Janet tried to leave, but appellant
grabbed her by her arms and threw her on the ground of the tent. He then sat on her abdomen and
pinned one arm behind Janet's head and refused to let her up. Meanwhile, appellant's gun was on
the nearby sleeping bag, an arm's length away. Janet shouted at appellant and demanded that he let
her go, but to no avail. When Janet asked appellant what he wanted from her, he stated that he
"needed to have sex with [Janet] one more time to have closure to the relationship, and he told [her]
he would let [her] up if [she] would agree to that." When she refused, he slammed her down,
causing her to hit her head on a rock underneath the tent. Appellant eventually allowed Janet to get
up, although he continued to ask her for sex. She again refused and left the tent. At that point,
appellant told Janet that she "better watch over [her] shoulder every minute of every day." Afraid
of what appellant meant by his statement, Janet finally agreed to have sex with appellant. After the
sexual encounter was over, appellant asked Janet for her panties, explaining that he wanted her
"scent." She refused. She then returned home. Janet did not report the incident to anyone that night.

 The following morning, as Janet arrived at work, she received a phone call from the
owner of the landscaping service that she had employed to fix a lawn mower at her house. 
According to the owner, the lawn mower repairman who had been at Janet's house saw a man
breaking into the house. The owner thought it might be appellant. Janet called the police and
returned to her house. When she arrived, Comal County Sheriff's Deputy John Pruess was already
there. Pruess had encountered appellant as he left the house. According to testimony at trial,
appellant had "jimmied" the back door open to enter the house. Although appellant claimed that he
only intended to pick up a few of his things, the only item Pruess found in appellant's possession
were the panties that Janet had worn the night before. Nothing else was missing from the house. 
Pruess also found a gun inside of an overnight bag in the back seat of appellant's car. Appellant was
arrested as a result of the break-in, and Janet applied for a protective order that same day, but she still
did not report the events of the previous night to the police or anyone else.

 It was not until October 12, nine days after the alleged sexual assault and kidnapping,
that Janet first reported the events of October 3 to the police. Although the accounts differed during
trial, Janet testified that on October 12, she arrived at work, parked her car in the parking garage, and
as she exited her car, she saw appellant approaching her with a gun at his side. When he reached
Janet's car, he pulled the slide back on the gun and pointed it into Janet's abdomen. Appellant told
Janet to get in the car, that he "wouldn't be here after today," and he demanded sex from her. Just
then, the building engineer, Pablo Galvan, Jr., walked into the garage, and Janet mouthed the word
"help" to him. When appellant realized that someone was behind him, he swung around and pointed
the gun at Galvan. Janet used this opportunity to try to get away, but when she did, appellant hit her
at least once on the head with the gun. (Janet testified that she was hit three or four times; appellant
stated he only hit her once.) Janet fell to the ground, began screaming, and appellant fled. 
Eventually, a woman approached Janet and helped her into the building. When San Antonio police
officer Bruce Thomas Wilson arrived and interviewed Janet about the incident, he asked her if
appellant had ever done anything like this before. Janet then recounted the events that took place
in the tent on the night of October 3. Because the police officer was a San Antonio police officer
and the October 3 incident took place in Comal County, the police officer only obtained the basic
facts and then notified Comal County. Janet also secured a final protective order, barring appellant
from having any contact whatsoever with Janet or their daughters.

 Appellant was charged with two counts of aggravated sexual assault and one count
of aggravated kidnapping based on the October 3 incident. A jury acquitted appellant of the
aggravated sexual assault charges and convicted him for aggravated kidnapping. The jury assessed
punishment at ten years' imprisonment and a $10,000 fine, both of which were probated.


DISCUSSION


 By his second point of error, appellant challenges the legal sufficiency of the evidence
to support his conviction. He specifically challenges the sufficiency of the evidence to support the
abduction element of the offense.

 Under a legal sufficiency review, we view the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Staley v.
State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). Any inconsistencies in the evidence should be
resolved in favor of the verdict. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 

 The standard of review is the same in both direct and circumstantial evidence cases. 
King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). The State may prove its case by
circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable
doubt. Easley v. State, 986 S.W.2d 264, 271 (Tex. App.--San Antonio 1998, no pet.). The
sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact
in isolation need not establish the guilt of the accused. Alexander v. State, 740 S.W.2d 749, 758
(Tex. Crim. App. 1987). The jury is the exclusive judge of the facts proved, the weight to be given
the testimony, and the credibility of the witnesses. See Tex. Code Crim. Proc. Ann. art. 38.04 (West
1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury is free to reject
or accept any or all of the evidence presented by either party. Saxton v. State, 804 S.W.2d 910, 914
(Tex. Crim. App. 1991). The jury maintains the power to draw reasonable inferences from basic
facts to ultimate facts. Welch v. State, 993 S.W.2d 690, 693 (Tex. App.--San Antonio 1999, no
pet.). 

 We measure the sufficiency of the evidence against a hypothetically correct charge. 
Curry v. State, 975 S.W.2d 629, 630 (Tex. Crim. App. 1998). The indictment charged appellant with
committing an aggravated kidnapping by (1) intentionally and knowingly abducting Janet (2) with
the intent to violate or abuse her sexually. Tex. Pen. Code Ann. § 20.04(a)(4) (West 2003). (1) Abduct
is defined as to restrain a person with intent to prevent her liberation by secreting or holding her in
a place where she is not likely to be found or by using or threatening to use deadly force. Id.
§ 20.01(2) (West 2003). Restrain means "to restrict a person's movements without consent, so as
to interfere substantially with the person's liberty, by moving the person from one place to another
or by confining the person." Id. § 20.01(1) (West 2003). The restraint is without consent if it is
accomplished by force, intimidation, or deception. Id.

 Janet testified at trial that on the night of October 3, while inside the tent, appellant
became agitated when Janet reiterated that stopping the divorce proceeding was not an option. He
then pulled out a gun, "chambered a round," and told Janet that "he guesses the children [are] going
to be orphans." When Janet asked appellant, "Do you mean that you are going to kill me," he
responded, "If I can't have you, no one else will." Janet tried to get out of the tent, but appellant
grabbed her by her arms and threw her on the ground of the tent. He then sat on her abdomen and
pinned one arm behind her head. She repeatedly shouted at him, urging him to let her go and tried
to free herself from his grasp. Janet testified that appellant held her like this "for about three to five
minutes." Appellant told Janet that "he needed to have sex with [her] one more time to have closure
to the relationship," and "he would let [her] up if [she] would agree to that." When Janet refused,
appellant slammed her down, causing her to hit her head on a rock on the bottom of the tent. Janet
stated that appellant scared her to death and she "didn't think [she] was going to be able to leave
there without getting shot."

 Appellant argues that "[i]f this can be viewed as a restraint it cannot be deemed a
substantial interference." For support, he emphasizes that appellant did not force Janet to go to the
RV park or to enter the tent, and she was pinned for less than five minutes. He further directs us to
Deputy Pruess's trial testimony, during which appellant's defense counsel asked Deputy Pruess
about his observations of Janet when he met her at her house to investigate the break-in the following
day: "Did she [Janet] have any external or obvious bruises on her or anything of that nature?" 
Deputy Pruess answered: "Not that I observed, but I wasn't looking for any evidence." He also
testified that he did not remember noticing any marks on Janet's face. Appellant infers from this
testimony that Deputy Pruess did not detect any injury on Janet. Finally, he finds it significant that
Janet did not report the incident to the authorities until nine days later.

 The court of criminal appeals has held that while the legislature did not intend for
every crime that involves a victim whose liberty has been interfered with to turn into a kidnapping,
there is no specific time requirement for determining whether a restraint has taken place. Hines v.
State, 75 S.W.3d 444, 447-48 (Tex. Crim. App. 2002). It is up to the jury to consider all of the
circumstances surrounding the offense and determine whether a "substantial" interference--as
opposed to a slight interference--with the victim's liberty has taken place. Id. at 448.

 When viewed in the light most favorable to the verdict, the evidence in this case
shows that appellant held a gun and threatened to orphan his and Janet's children. When Janet tried
to leave the tent, appellant threw her on the ground, sat on her abdomen, and pinned her arm behind
her head, refusing to let her up unless she had sex with him. As in Hines, appellant maintained
physical control over the complainant. Id. These circumstances surrounding the offense support the
jury's finding that appellant substantially interfered with Janet's liberty.

 Under his legal sufficiency point of error, appellant also argues that the trial court
erred in convicting him for "aggravated" kidnapping because the jury failed to affirmatively find that
appellant used a deadly weapon during the commission of the offense. Appellant was charged with
intentionally and knowingly abducting Janet with the intent to violate or abuse her sexually. The
aggravating element was appellant's intent to violate or abuse Janet sexually. Thus, a use of a deadly
weapon finding was not a necessary element of the charged offense. Compare Tex. Pen. Code Ann.
§ 20.04(a), with id. § 20.04(b). We overrule appellant's legal sufficiency challenge.

 By his first point of error, appellant challenges the factual sufficiency of the evidence
to support his conviction. In determining the factual sufficiency of the elements of the offense, the
reviewing court views all of the evidence in a neutral light. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex.
Crim. App. 2000). The court reviews the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compares it with the evidence that tends to disprove
that fact. Id. In conducting its factual sufficiency review, an appellate court reviews the jury's
weighing of the evidence and is authorized to disagree with the jury's determination. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). The reviewing court, however, does not substitute
its judgment for that of the jury and should set aside the verdict only if the evidence is so weak as
to be clearly wrong or manifestly unjust or if the finding of a vital fact is so contrary to the great
weight and preponderance of the evidence as to be clearly wrong. Zuliani v. State, 97 S.W.3d 589,
593 (Tex. Crim. App. 2003); Johnson, 23 S.W.3d at 11. The reviewing court may not reverse a
jury's decision simply because it disagrees with the result. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). 

 Appellant's defensive theory throughout the trial was that he and Janet had consensual
sex the night of October 3, and only several days later did Janet concoct the story that appellant had
kept her in the tent against her will and sexually assaulted her; appellant suggested that Janet did this
to gain an advantage in the divorce proceedings. In cross-examining Janet, appellant's defense
counsel built upon this theory by repeatedly questioning Janet as to why she waited so long before
reporting the alleged assault. On the night of October 3, one of the couple's daughters called Janet
on her cell phone shortly after the sexual act occurred. Janet made no mention to her daughter that
she had just been assaulted. Likewise, the next morning when Janet called the police to report
appellant's break-in, she did not mention the assault. Janet testified that before she called the police
that morning, she first called her attorney for advice. Appellant's defense counsel found it
significant that appellant's breaking in to her house caused Janet enough concern to call her attorney
for advice and to call the police, yet an alleged sexual assault the night before did not prompt a
similar reaction. When Janet actually met with a police officer at her house the morning of October
4, she still said nothing about the events of the night before. Further, the theft of her panties caused
Janet to seek appellant's arrest as well as a protective order, yet she found it unnecessary to report
an alleged sexual assault. Similarly, when Janet spoke to appellant's mother, Bobbie Armstrong,
on October 4, she did not mention the alleged assault. Finally, Janet testified that she was a nurse,
and yet, she failed to preserve any evidence indicating that she was assaulted.

 Appellant testified as to his version of the events that took place on October 3. 
According to appellant, Janet arrived at the RV park to discuss a possible reconciliation. Janet went
into the tent, and appellant admitted that he had a gun in the tent. He stated that the gun was inside
a holster and placed near his sleeping bag. At no time during the evening of October 3 did appellant
take the gun out of its holster. When Janet expressed unease at the sight of the gun, appellant placed
the gun in an overnight bag in an adjoining room in the tent--the same bag in which it was
discovered by Deputy Pruess the following day. Appellant and Janet spoke for about an hour, and
then he walked her back to her car. Appellant testified that Janet had agreed to a one-year "wait and
see" period, during which neither appellant nor Janet would begin a new romantic relationship with
anyone else. Appellant characterized this agreement as a one-year reconciliation agreement. He then
asked Janet if she would "be intimate with [her] husband tonight." She agreed; appellant used no
force to convince Janet to return to the tent and have sex with him. Appellant denied making any
statement about "orphaning" his and Janet's children that night; he maintained that the statement was
made three weeks earlier during a telephone conversation with Janet. He admitted asking Janet for
her underwear, but said he did so only in jest.

 The following morning, appellant stated that he called Janet when he first awoke, they
had a short conversation during which appellant thanked Janet for the previous evening, and Janet
agreed to call him later, as she was running late for work. Appellant tried to get to the house before
Janet left for work; he intended to pick up a few more things for his campsite and some of his
personal, separate property. Janet, however, had already left for work by the time appellant arrived
at the house. He attempted calling her cell phone four more times and her office once to let her
know that he was at the house. He was unable to reach Janet, but nevertheless broke into the house
through the back door because he no longer had a key to the house. Once inside, he became incensed
by what he perceived as indicators that Janet was having an affair. In a confused and emotional state,
he picked up the panties that Janet had worn the night before, which had been lying on the bed,
shoved them into his pocket, started dialing Janet's telephone number on his cell phone, and walked
out of the house through the garage, when he encountered Deputy Pruess. Appellant testified that
he was in no way attempting to interfere with evidence of the alleged sexual assault that occurred
the night before when he took the panties. He merely wanted a souvenir of his last night with Janet. 
Appellant speculated that Janet made up the sexual assault allegations in an effort to keep him away
from their daughters permanently. 

 Appellant also attempted to explain his version of the events that occurred on October
12. He said that he was emotionally distraught. He desperately wanted to speak to Janet, and fearing
that Janet might scream at the sight of appellant and someone might come to her rescue, appellant
brought a gun so that he would be able to keep them away and leave the scene. But the gun had no
ammunition in it, and appellant never pointed the gun at Janet or demanded sex from her. He was
simply trying to make sure no one got hurt. He admitted hitting Janet, but did so only because he
saw Janet reach into her purse, and he was afraid she had a weapon of her own. In trying to prevent
Janet from reaching into her purse, appellant accidentally struck her on the head with his gun, but
did so only once, contrary to Janet's account, and then he fled in a state of panic. He turned himself
in to the police a few days later.

 Appellant's mother, Bobbie Armstrong, also testified during the trial. She stated that
she spoke to Janet on the afternoon of October 4, the day after the incident at the RV park. Appellant
asked his mother to call Janet to ask her if she was still willing to wait a year before commencing
a new relationship with anyone else. When Bobbie Armstrong posed this question to Janet, Janet
said she was still willing to wait the year. At no time during their conversation did Janet report what
had occurred the night before. 

 In his brief, appellant argues that the evidence is factually insufficient to support his
conviction. For support, he points out that Janet failed to report the incident until nine days after it
occurred. There was no corroborating evidence to support Janet's allegations, such as evidence of
bruising, and Janet failed to attempt to preserve any evidence even though she is a nurse and should
have realized the importance of preserving evidence. No testimony corroborating Janet's allegations
was presented during the trial, and in fact, testimony from appellant's mother actually contradicted
Janet's allegations.

 On the other hand, Janet testified that she initially decided not to report the October
3 incident because she did not want her children to hear about it. She said that she was hoping to
get through with the divorce, move on with her life, and try to forget the whole thing ever happened. 
Only after she recognized appellant's conduct towards her was getting worse did she decide to report
the incident. And the State argued that Janet's panties could have been evidence of the alleged
sexual assault, but appellant stole that evidence.

 Viewing this evidence in a neutral light, we conclude that the jury could have
reasonably concluded that appellant committed the offense of aggravated kidnapping. The verdict
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong, nor is the
evidence supporting the verdict so weak as to render the verdict clearly wrong or manifestly unjust. 
Appellant's second point is overruled.

 By his third point, appellant argues that the trial court erred in admitting evidence of
extraneous bad acts during the trial. Specifically, appellant contends that evidence of the October
12 attack in Janet's workplace parking garage and evidence of two "stalking" incidents on previous
dates were inadmissible.

 Evidence is relevant if it has any tendency to make the existence of a fact that is of
consequence to the determination of the action more or less probable than it would be without the
evidence. Tex. R. Evid. 401. Relevant evidence is generally admissible, id. 402; however, evidence
of other crimes, wrongs, or bad acts by the defendant is not admissible if it is relevant only to show
that the defendant acted in conformity therewith. Id. 404(b). The extraneous offense evidence must
be relevant apart from indicating mere character conformity; it must tend to make more or less
probable some elemental or evidentiary fact or some defensive theory. Id.; Montgomery v. State, 810
S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); Johnson v. State, 932 S.W.2d 296, 301
(Tex. App.--Austin 1996, pet. ref'd). Even if it is relevant, however, extraneous offense evidence
may still be excluded if its relevance is substantially outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403; Montgomery, 810 S.W.2d at 387; Johnson, 932 S.W.2d at 303. We review a trial
court's admission of extraneous offense evidence under an abuse of discretion standard. Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1999); Montgomery, 810 S.W.2d at 390-92.

 Through rigorous cross-examination of Janet, appellant suggested that Janet
consented to the sexual encounter that occurred on the night of October 3, and that she fabricated
the sexual assault and kidnapping allegations to gain an advantage during her divorce proceedings
with appellant. Following appellant's cross-examination of Janet, the State argued, outside the
presence of the jury, that appellant had opened the door to the admission of the extraneous offense
evidence because appellant made consent an issue. Furthermore, appellant questioned Janet about
the report she made on October 12, nine days after the alleged assault and kidnapping occurred, and
noted that she did not go into detail when making the report. Consequently, argued the State, the
jury was left with the impression that Janet, for no apparent reason, spontaneously decided to report
the October 3 incident on October 12, and that when she did, the police officer to whom she reported
the incident did not ask for the details. This implied, according to the State, that Janet was making
up the whole story. After the court expressed its concern about the State spending too much time
on the extraneous offenses and warned the State that if it did spend more time on the extraneous
offenses than necessary, the court would "jump in, because that's not what this case is about," the
court allowed the State to present the extraneous offense evidence, but only for a limited purpose. 

 Appellant objected to the admission of the evidence based on both rule 404(b) and
rule 403; the court overruled the objection and allowed a running objection. Before the State
proceeded with its evidence, the court, in response to appellant's request, instructed the jury that they
could consider the extraneous offense evidence only "for the purpose of determining the intent, the
motive, the common plan or scheme or design, . . . of the Defendant and for no other purposes
whatsoever."

 The State then elicited testimony from Janet describing two occasions in which she
observed appellant following her from different locations--both incidents occurred after October
3 but before October 12. She then described the events that occurred on October 12. In addition to
Janet's testimony, the State produced three witnesses--Officer Wilson, to whom Janet reported the
incident, Louis Michelle Moran, the woman who saw appellant run off after he hit Janet and then
assisted Janet into the building, and Galvan, the building engineer whom appellant threatened with
a gun when he came to assist Janet.

 An extraneous offense is admissible to prove the culpable mental state required for
the charged offense if the required intent cannot be inferred from the act itself, or if the accused
presents evidence to rebut that inference. Johnson, 932 S.W.2d at 302; Brown v. State, 96 S.W.3d
508, 512 (Tex. App.--Austin 2002, no pet.); Zuliani v. State, 903 S.W.2d 812, 827 (Tex.
App.--Austin 1995, pet. ref'd). Here, appellant, through the cross-examination of Janet, constructed
the defensive theory that Janet had engaged in consensual sex and fabricated the kidnapping and
sexual assault allegations to gain an advantage during her divorce proceedings. Appellant therefore
disputed his intent to engage in alleged sexual conduct without Janet's consent, thus placing his
intent in issue. See Brown, 96 S.W.3d at 512 (citing Rubio v. State, 607 S.W.2d 498, 501 (Tex.
Crim. App. 1980); Wiggins v. State, 778 S.W.2d 877, 884-85 (Tex. App.--Dallas 1989, pet. ref'd)). 
Appellant's intent cannot be inferred from the mere act of intercourse with Janet. Id. (citing Rubio,
607 S.W.2d at 502; Wiggins, 778 S.W.2d at 884-85). He also contested his intent to restrain Janet's
movements without her consent by force or intimidation in order to abuse or violate her sexually. 
See Tex. Pen. Code Ann. §§ 20.01, .04.

 Janet's testimony revealed that on October 12, appellant pointed a gun at her while
in a parking garage and demanded sex from her. He prevented her from fleeing from him by hitting
her with a gun. Janet testified that appellant displayed a gun the night of October 3 as well, and
sought sex from her that night. The trial court could reasonably have concluded that evidence
regarding appellant's conduct on October 12--pointing a gun at Janet while demanding sex from
her--tended to make the existence of appellant's guilty intent on the night of October 3 more
probable than it would be without the evidence. See Montgomery, 810 S.W.2d at 391.

 Similarly, Janet's testimony regarding appellant's following her on two separate
occasions could also tend to make the existence of appellant's intent to restrain her by force or
intimidation more probable than it would be otherwise. See id. We cannot say that the trial court
abused its discretion in concluding that the extraneous offense evidence was relevant to appellant's
intent.

 Appellant also objected to the admission of the extraneous offense evidence based
on rule 403, which provides: "Although relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice . . . ." Tex. R. Evid. 403. Factors
considered in a rule 403 analysis include: (1) how compellingly the extraneous act evidence serves
to make a fact of consequence more or less probable;( 2) the potential for the extraneous act evidence
to irrationally but indelibly impress the jury; (3) the trial time expended developing the evidence;
and (4) the strength of other evidence available to prove a fact of consequence. Santellan v. State,
939 S.W.2d 155, 169 (Tex. Crim. App. 1997). "Rule 403 favors the admission of relevant evidence
and carries a presumption that relevant evidence will be more probative than prejudicial." Hayes
v. State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). We will not disturb the trial court's decision
on appeal unless the decision falls outside the zone of reasonable disagreement. Robbins v. State,
88 S.W.3d 256, 262 (Tex. Crim. App. 2002); Hayes, 85 S.W.3d at 815. 

 In this case, the October 3 and October 12 events were sufficiently similar and
occurred within such a short time span so as to render the extraneous offense evidence compelling
on the issue of appellant's intent. See Cantrell v. State, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987)
(factors of similarity and remoteness are important in determining the relevance and probative value
of extraneous offense evidence); Brown, 96 S.W.3d at 512 (same). The State had little other
evidence to prove appellant's intent. Janet's testimony, along with the circumstantial evidence of
appellant taking her underwear the following day, were the only evidence available to the State other
than the extraneous offense evidence. The State devoted a considerable amount of trial time in
developing the extraneous offense evidence through Janet's testimony; the other three witnesses,
however, testified only briefly. We cannot say that the evidence irrationally or indelibly impressed
the jury. That the jury acquitted appellant of the two aggravated sexual assault charges while
convicting him of aggravated kidnapping and assessed punishment at ten years' probation supports
the trial court's determination that the probative value of the evidence outweighed any danger of
unfair prejudice. Considering all the factors, we hold that the trial court's decision that the probative
value of the extraneous offense evidence was not substantially outweighed by the danger of unfair
prejudice did not fall outside the zone of reasonable disagreement. We overrule appellant's third
point.

 By his final point of error, appellant contends the trial court erred in failing to grant
a mistrial during the punishment phase when the State introduced evidence of other bad acts without
providing proper notice. During the State's cross-examination of appellant in the punishment phase
of trial, the State elicited from appellant testimony that he surrendered his nursing license because
he was "medicating" himself with hydrocodone and marihuana. He obtained the hydrocodone from
a patient without the patient's consent. Only after appellant testified about his drug use did his
counsel object to the State's questions based on its failure to provide notice of intent to offer
extraneous offense evidence during the punishment phase of trial. The trial court overruled the
objection as to the testimony that had already been provided, but instructed the State not to delve any
further into the extraneous offense evidence. Later, after the trial court excused the jury, the State
and appellant each offered into evidence the notices of intent provided by the State (none of which
listed appellant's drug use), and appellant asked for a mistrial, which the trial court denied.

 The State contends that appellant failed to preserve this point for review, as his
objection to the complained-of testimony was untimely. See Tex. R. App. P. 33.1(a)(1) (to preserve
complaint for review, record must show timely objection was made). Assuming without deciding
that appellant preserved this point of error for review, under the facts of this case, we conclude that
the State was not required to provide notice of its intent to introduce evidence of appellant's drug
use. 

 We review the admission of extraneous offense evidence for an abuse of discretion. 
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); Roethel v. State, 80 S.W.3d 276,
280 (Tex. App.--Austin 2002, no pet.). We will affirm the trial court's decision if it falls within a
zone of reasonable disagreement. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001);
Roethel, 80 S.W.3d at 280.

 The notice requirement specific to evidence of extraneous offenses introduced during
the punishment phase of trial is found in article 37.07, section 3(g) of the code of criminal procedure;
it requires notice of intent to introduce evidence of an extraneous crime or bad act be given in the
same manner required by rule of evidence 404(b). Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g)
(West Supp. 2003). This notice requirement, however, encompasses only the State's case-in-chief
evidence, not rebuttal evidence. Jaubert v. State, 74 S.W.3d 1, 2-3 (Tex. Crim. App. 2002).

 Here, before the State elicited the complained-of testimony, appellant testified during
direct examination that he surrendered his nursing license because he was diagnosed with clinical
depression following the death of his brother. He also testified that he had "never been in trouble
before" and that he did not consider himself "a criminal." This testimony suggested that the sole
reason for appellant's surrender of his nursing license was that he was clinically depressed, and it
had nothing to do with criminal behavior. The State, through cross-examination regarding
appellant's drug use, sought to rebut this impression. Because the testimony was offered as rebuttal
evidence, the State was not required to provide notice of its intent to introduce extraneous offense
evidence. See id. Appellant's final point is overruled.


CONCLUSION

 Having overruled all of appellant's points of error, we affirm the trial court's
judgment of conviction.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 22, 2003

Do Not Publish
1. Section 20.04 provides:


(a) A person commits an offense if he intentionally or knowingly abducts
another person with the intent to:


 (1) hold him for ransom or reward;


 (2) use him as a shield or hostage;


 (3) facilitate the commission of a felony or the flight after the attempt or
commission of a felony;


 (4) inflict bodily injury on him or violate or abuse him sexually;


 (5) terrorize him or a third person; or 


 (6) interfere with the performance of any governmental or political
function.


Tex. Pen. Code Ann. § 20.04(a) (West 2003).