James Norris WELCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00973–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 17, 1999.

Rehearing Overruled April 14, 1999.

Kimberly E. Young, San Antonio, for Appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice PAUL W. GREEN, Justice KAREN ANGELINI, Justice.

PAUL W. GREEN, Justice.

A jury convicted James Welch of aggravated sexual assault and aggravated robbery and sentenced him to life imprisonment plus a $10,000 fine. On appeal, Welch complains about legal insufficiency, the admission of DNA evidence, the denial of a change of venue, the absence of a jury instruction on a lesser included offense, and the admission of evidence of extraneous offenses during the punishment phase. We affirm.

## BACKGROUND

On December 17, 1996 around 10:00 p.m., Alice Lopez fell asleep on the sofa in the sitting area outside her second-story bedroom. At approximately 1:00 a.m., she woke to find a stranger sifting through her belongings. When she asked him who he was, he motioned for her to be quiet and to go over to him. Alice saw a sharp object in his hand, which she believed was a box cutter. The stranger warned Alice not to speak or he would "cut her up."

When Alice approached him, he dragged her downstairs to the living room where he forced her to have sexual intercourse. While assaulting Alice, he ordered her to remove her rings and bracelets. After assaulting Alice, he ordered her not to move until he was gone or he would kill her. He left with Alice's jewelry, as well as a black leather jacket belonging to Alice's daughter Evelyn. The jacket contained Evelyn's wallet, keys, and an eyeliner pencil.

After the man left, Alice ran to Evelyn's room and ordered her to call for help. While Alice waited in Evelyn's room, Evelyn woke her father and called the police. Officer Mendoza arrived at the Lopez home to find Alice shaken and crying. He observed a pair of women's underwear near the front door and a wet spot on Evelyn's bed, which he thought might contain semen. After recording Alice's description of her attacker, Officer Mendoza escorted the Lopezes to University Hospital.

Nurse practitioner Nancy Sugarek examined Alice. Sugarek observed small ruptured blood vessels on Alice's back where her bra contacted her skin. Sugarek also noted redness in the vaginal area. These observations, combined with Alice's apparent emotional state and account of the trauma, led Sugarek to conclude Alice had been sexually assaulted. Sugarek also collected hair and fluid samples for the rape kit.

In the months following this incident, other sexual assaults were reported in Alice's neighborhood. The police and media referred to the perpetrator of these crimes as the "Southeast Side Rapist." Ultimately, Welch was identified as Alice's attacker through tests comparing DNA from the rape kit's vaginal swab to that found in Welch's blood.[1] In fact, the test results, combined with those arising from other attacks in southeast Bexar County, led authorities to suspect Welch was the serial rapist.

During trial, the State produced additional evidence to prove Welch robbed the Lopez home. During a search of Welch's mother's dining room, where Welch had been storing some of his belongings, police recovered a box cutter, Evelyn's black wallet and eyeliner, and several items of dark clothing. Furthermore, officers on pawn shop detail testified they located Alice's jewelry at various pawnshops on the southeast side of town. Pawn slips indicated Welch pawned these items within

days of the attack at the Lopez home—December 18, 1996 and December 20, 1996.

## LEGAL SUFFICIENCY

In his second point of error, Welch argues the evidence of his guilt is legally insufficient to sustain his conviction. He claims the trial court should have granted his motion for directed verdict because the State failed to produce evidence he was the assailant. In particular, Welch contends neither Alice's in-court identification, the stolen property, nor the DNA evidence proves he committed the sexual assault and robbery. The State, on the other hand, argues "the cumulative evidence of appellant's identity is overwhelming." We agree with the State.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution and inquire whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *King v. State,* 895 S.W.2d 701, 703 (Tex. Crim.App.1995). This standard applies to direct and circumstantial evidence alike. *King,* 895 S.W.2d at 703; *McGoldrick v. State,* 682 S.W.2d 573, 577 (Tex.Crim.App. 1985). Furthermore, identity may be established either through direct or circumstantial evidence. *Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986); *Krebsbach v. State,* 962 S.W.2d 728, 734 (Tex. App.—Amarillo 1998, pet. ref'd).

While reviewing the evidence, we are mindful that the jury alone judges the weight and credibility of the evidence. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex. Crim.App.1995). The jury also maintains the power to draw reasonable inferences from basic facts to ultimate facts. *Hernandez v. State,* 939 S.W.2d 692, 693 (Tex. App.—Fort Worth 1997, pet. ref'd).

---

1. Welch's blood was drawn during the investigation of another sexual assault.

Moreover, it is within the province of the jury to reconcile evidentiary conflicts. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982).

Although Welch complains the State produced no proof he was the assailant, he acknowledges Alice identified him at trial. In effect, he argues the in-court identification was incredible because Alice was unable to identify him before taking the stand.[2] Credibility issues are for the jury, not this Court, to decide. Accordingly, Welch's complaint is without merit.

Second, Welch argues his possession of Evelyn's property, as well as his pawning of Alice's jewelry, proves only that he was in possession of stolen property. This evidence, however, was also circumstantial proof that he robbed the Lopezes. From this evidence, the jury could have believed Welch merely possessed stolen property or inferred that he stole it himself. By its verdict, the jury indicated it inferred Welch robbed the Lopezes of the property; we may not disturb its decision.

■ Finally, Welch claims the DNA evidence failed to establish identity because it was scientifically unreliable and should not have been admitted. Regardless of whether this evidence was properly admitted, we must consider it when reviewing for legal sufficiency. *Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Crim.App.1991). Accordingly, the DNA results were some evidence he committed the sexual assault.

In conclusion, all of this evidence supports the jury's verdict. *See Villalon v. State*, 791 S.W.2d 130, 132 (Tex.Crim.App. 1990) (holding that evidence may not be isolated for scrutiny but that all evidence must be considered). We therefore overrule Welch's second point of error.

## ADMISSION OF DNA EVIDENCE

In his first point of error, Welch argues the trial court erred in admitting DNA test results that were scientifically unreliable. In particular, he complains the

State's DNA expert (1) deviated from the protocol required for the test and (2) lacked expertise to sponsor the DNA evidence. The State maintains Welch failed to preserve these complaints for review because he stated he had "no objection" when the written DNA results were offered. We agree with the State.

■ When a defendant challenges the admissibility of certain evidence in a hearing outside the presence of the jury, he need not renew his objection when the evidence is offered at trial in order to preserve his complaint for review. *See* Tex.R. Evid. 103(a)(1); *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex.Crim.App.1986). However, if at trial the defendant states he has "no objection" when the evidence is offered, he waives his admissibility complaint. *Moraguez*, 701 S.W.2d at 904. Counsel for Welch stated there was "no objection" when the State offered the written report confirming Welch's DNA matched the DNA sampled from the rape kit to a certainty of 1/125,000,000. Thus, Welch waived his right to complain about the admissibility of the DNA evidence. We therefore overrule his first point of error.

## VENUE

■ Welch's third point of error challenges the court's denial of his request for a change of venue. Welch argues that extensive media coverage of the Southeast Side Rapist story, combined with the news of his arrest for the crimes, before his trial deprived him of his right to an unbiased jury. The State maintains the trial court correctly denied the change because Welch failed to meet his burden of proof. We agree with the State.

■ We review the trial court's venue determination for an abuse of discretion. *McGinn v. State*, 961 S.W.2d 161, 163 (Tex.Crim.App.1998). Thus, we may not reverse the ruling unless it is unreasonable

---

2. Welch does not argue the identification procedure at trial was impermissibly suggestive.

in light of the record evidence. *Id.* The occurrence of pretrial publicity creates no automatic presumption of prejudice; jurors need not come to court completely ignorant of the facts. *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992). Rather, a change of venue is required only where pretrial publicity is "so pervasive and prejudicial as to create a reasonable probability that an impartial jury cannot be empaneled even with the most careful voir dire." *Id.*

At the venue hearing, Welch presented evidence of television, radio, and print media coverage. James Forsyth, news division manager at WOAI radio, testified his station provided extensive coverage of the story with emphasis of the crimes' effect on the community. Forsyth estimated the majority of the stories aired near the time of the assaults and recalled Welch's name mentioned only in conjunction with the news of his arrest. Finally, Forsyth recalled no coverage since Welch's arrest and stated his belief that the level of publicity in this case was not unusual. Dale Rankin, coordinating producer for KENS television, sponsored the transcript and video of approximately eighty new stories and press conferences. He recalled the bulk of the coverage aired while the suspect was still at large and suggested this story received publicity out of concern for the safety of the southeast Bexar County community. He was only vaguely familiar with Welch, recalling stories about Welch's bond proceeding and the DNA test results. In sum, Rankin disagreed with the defense's position that his station's coverage was inflammatory or biased against Welch.

A private investigator hired by Welch produced twenty-one newspaper articles printed in the *San Antonio Express–News.* Only five of them mentioned Welch in connection with the Southeast Side Rapist, and the front page of one article displayed Welch's picture. The majority of these articles were written around the time the attacks occurred. Circulation of the paper for the period from January through August 1997 ran approximately 238,000 on weekdays and 387,000 on Sundays. In addition, the investigator stated he believed Welch's name was synonymous with the term Southeast Side Rapist.

Finally, Welch examined three criminal defense attorneys, all with extensive trial experience in Bexar County, who opined Welch could not get a fair trial in the county. The State presented six affidavits asserting Welch could receive a fair trial in Bexar County. Denying Welch's request, the trial court told him he could reassert his request at the close of jury selection.

The exchange between counsel and venire during voir dire supports the State's contention that publicity about Welch did not rise to the level of prejudice that would prevent him from securing an impartial jury. Although approximately one-half of the panel stated they were exposed to media coverage of the Southeast Side Rapist story, hardly any of them recalled any details of the stories or Welch being named as the suspect. Only one member stated he would be unable to set aside his personal knowledge about the case, and he was excused for cause. Closer inspection of the voir dire dialogue with the jury members eventually chosen reveals only two members had heard of Welch prior to trial. Four had never heard the Southeast Side Rapist story, and six had heard the story but never heard of Welch.

In light of all this evidence, we cannot say the trial court abused its discretion in denying Welch's request for a change of venue. Due process does not guarantee Welch a jury completely ignorant of the facts of his case. Because Welch failed to demonstrate an impartial jury could not be selected even with a careful voir dire, we overrule his third point of error.

## JURY INSTRUCTION ON LESSER-INCLUDED OFFENSE

In his fourth point of error, Welch argues the trial court erred in denying his request for a jury instruction on the "less-

er included offense" of misdemeanor theft because the evidence merely showed he possessed stolen property. The State maintains the trial court properly denied Welch's request because the evidence did not support it. We agree with the State.

 A defendant is entitled to a jury charge on a lesser included offense if (1) the lesser included offense is subsumed in the proof necessary to establish the offense charged, *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985); and (2) some evidence in the record "would permit a jury rationally to find" that the defendant, if guilty, is guilty only of the lesser offense, *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993). If a defendant presents no evidence, and no evidence otherwise raises the issue of a lesser offense, a charge is not required. *Aguilar*, 682 S.W.2d at 558.

 In reviewing a court's decision not to give a charge on a lesser offense, we examine all of the evidence presented at trial, *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984), regardless of whether it is credible, controverted, or conflicting, *Hobson v. State*, 644 S.W.2d 473, 477 (Tex.Crim.App.1983). However, the evidence may not be "plucked out of the record and examined in a vacuum." *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim.App.1986).

### 1. Aggravated Sexual Assault

 With regard to the charge of aggravated sexual assault, our inquiry ends with the first part of the test because the State did not have to prove Welch committed misdemeanor theft to secure a conviction for aggravated sexual assault. *Compare* Tex. Pen.Code Ann. § 22.021 *with* § 31.03 (Vernon 1994). *See also Ramos v. State*, 865 S.W.2d 463, 465 (Tex.Crim.App. 1993) (recognizing sexual assault as a lesser included offense); *Cunningham v. State*, 726 S.W.2d 151, 153 (Tex.Crim.App. 1987) (recognizing indecency with a child as same). Accordingly, the trial court did

not err in denying Welch's request with respect to the charge of aggravated sexual assault.

### 2. Aggravated Robbery

 The State was required, however, to prove theft to successfully convict Welch of aggravated robbery. *See Campbell v. State*, 571 S.W.2d 161, 162 (Tex.Crim.App. 1978). Therefore, Welch survives the first part of the test. Welch cannot pass the second part of the test, however, because the jury could not have rationally found Welch guilty only of theft.

The jury encountered substantial evidence upon which it could have based its verdict that Welch committed aggravated robbery. Alice identified him as the man who entered her home, exhibited a deadly weapon, threatened her with imminent bodily injury, sexually assaulted her, stole property from her home, and escaped. DNA evidence confirmed Welch as the assailant. Finally, pawn shop receipts indicated Welch pawned most of the stolen items.

On the other hand, the evidence did not demonstrate Welch could be guilty only of theft. There was no evidence Welch merely appropriated property without consent. *See* Tex. Pen.Code Ann. § 31.03(b)(1) (Vernon 1994). Furthermore, the evidence neither showed Welch received the property from another nor indicated Welch knew the property was stolen by another. *Id.* § 31.03(b)(2). Accordingly, Welch's fourth point of error is overruled.

### Admission of Extraneous Offense Evidence During Punishment

 In his final point of error, Welch asserts the trial court erred during the punishment phase by admitting evidence of extraneous offenses without first hearing the evidence outside the jury's presence to determine whether the State proved those offenses beyond a reasonable doubt. The State contends that its written proffer presented to the court, combined with the court's subsequent oral ruling,

satisfied its statutory burden. We agree with the State.

 We review the trial court's decision to admit extraneous offense evidence with the abuse of discretion standard. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996). Extraneous offense evidence may be offered during the sentencing phase to assist the jury in determining punishment and is admissible "as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant[.]" Tex.Code Crim. Proc. Ann. art. 37.07, § 3 (Vernon Supp.1998). Furthermore, we bear in mind that while the trial court maintains authority to decide threshold issues of admissibility, the jury holds the power to decide whether the State has met its burden of proof. *Mitchell*, 931 S.W.2d at 953.

During Welch's punishment hearing, the State made a written proffer of how it would prove Welch sexually assaulted four other victims.[3] Welch objected, arguing the court should hold a hearing outside the jury's presence to determine whether the State had proved these offenses beyond a reasonable doubt. The court denied this request, and the punishment phase proceeded. The victims testified, and DNA evidence identifying Welch as the assailant in all instances was admitted. The trial court instructed the jury it could not consider the extraneous offenses unless it believed the State proved them beyond a reasonable doubt.[4] Finally, outside the jury's presence, the trial court orally ruled it found the State's written proffer satisfied article 37.07.[5]

The trial court's treatment of Welch's objection complied with both the Code of Criminal Procedure's requirement regarding the burden of proof, as well as *Mitchell*'s mandate that the jury ultimately decide whether the State met the burden. Welch supplies no authority for the proposition that a court must hear evidence of extraneous offenses outside the presence of the jury to determine admissibility during the punishment stage. Neither the statute nor precedent require a hearing. *Contra Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995) (recognizing requirement of hearing, outside jury's presence, regarding a confession's voluntariness). Furthermore, even if the trial court erred, there was no harm. *See Mitchell*, 931 S.W.2d at 954 (directing harm analysis where error found). Notably, Welch does not argue the State failed to prove the offenses beyond a reasonable doubt. We therefore overrule Welch's final point of error.

Conclusion

Because we find the evidence legally sufficient and the trial court's rulings correct, we affirm Welch's conviction.

---

3. These victims included an eleven year-old girl, a seventy-four year-old woman, and a woman eight months pregnant.

4. Welch makes no complaint about the court's charge as it relates to the extraneous offenses.

5. The court announced, "Also for the record . . . I will find that the State did prove each and every extraneous offense beyond a reasonable doubt pursuant to the written proffer that was tendered at the beginning of the punishment proceeding. So that is just a finding that I made at the beginning based upon the written proffer."