# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00247-CR
NO. 03-11-00248-CR
NO. 03-11-00249-CR
NO. 03-11-00250-CR
NO. 03-11-00251-CR

**Damien Bell, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NOS. D-1-DC-10-300050, D-1-DC-10-300051, D-1-DC-10-300054, D-1-DC-10-300060,
D-1-DC-10-300267, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Damien Bell, of three counts of aggravated robbery, two counts of aggravated kidnapping, and one count of burglary of a habitation. *See* Tex. Penal Code Ann. §§ 20.04(a), 29.03, 30.02(d) (West 2011). The trial court, in separate judgments, sentenced him to confinement for sixty years on each count, with the sentences to be served concurrently. *See id.* § 12.42 (West 2011) (penalties for repeat and habitual felony offenders). On appeal, appellant contends that (1) the evidence is insufficient to hold him criminally responsible under the law of parties for one of the aggravated kidnapping charges, (2) the evidence is insufficient to sustain his conviction for one of the aggravated robberies, and (3) the witness identification in one of the aggravated robberies was tainted. With regard to appellant's conviction for burglary of a

habitation and the remaining counts of aggravated kidnapping and aggravated robbery, appellant's court-appointed counsel has filed separate motions to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), concluding that the appeals of those judgments are frivolous and without merit. We will grant the motions to withdraw and affirm the trial court's judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves four robberies at two hotels that occurred in the early morning hours on December 6, 2009, and January 6, 2010. The following factual recitation is based on the testimony and evidence admitted at trial.

On December 6, 2009, Pearla Garcia, the night clerk at the Homewood Suites hotel in north Austin, opened a locked door to let in a man who inquired about renting a room. When she opened the door, two African-American males entered the building. The men accosted her, and one man held a revolver-type gun to her head. They demanded that Garcia give them money. Garcia gave them approximately $100 from the cash drawer, her purse, and her backpack, but the men became upset that she was unable to produce keys to unlock a combined safe and lock box in the hotel's office.[1] The men yelled and cursed at Garcia and threatened to kill her. At one point, the man holding the gun cocked the trigger, but his accomplice told him, "don't do it." The perpetrators ultimately detained Garcia in a separate room while they searched the office. After an extended period of time, the men left, and Garcia called her manager, who summoned police. Garcia provided

---

[1] Thomas Low, the victim in a later robbery at the Homewood Suites hotel, described the combined safe and lock box as a "cube made out of steel. And it had five safety deposit boxes, a couple inches tall all bolted together type thing, welded together." Photographs admitted at trial are generally in accord with this description.

a general description of the perpetrators to the police, including their race, approximate height and build, a description of their clothing and shoes, and her recollection that the man who held the gun to her head had tattoos on his neck. She also reported that one of the men had been at the hotel the night before inquiring about room rates; it was not the man who threatened her with a gun. Police were unable to identify a suspect based on fingerprints taken at the scene, which were later found not to match appellant's fingerprints. No other viable physical evidence was recovered from the scene.

Exactly one month later, on January 6, 2010, Thomas Low was working overnight at the same hotel when he was robbed at gunpoint by two African-American males who demanded cash from the cash drawer and the keys to the safe and lock box. Low turned over approximately $80-$100 in cash but told his assailants that he did not have a key to the safe and lock box. The men threatened to shoot Low with a revolver-type gun held to his head, but when Low still could not produce the key, the larger assailant physically removed the safe and lock box and took it with him. The assailants covered their faces with bandanas and their heads with hoodies. As a result, Low was unable to provide police with a physical description beyond race and approximate height and weight. No viable physical evidence was recovered from the scene.

Another hotel near the Homewood Suites hotel was also robbed in the early morning hours of January 6, 2010, shortly after Low was robbed. Juanita Cortez,[2] a night clerk at the Extended Stay America hotel, testified that she opened a locked door to allow entry to a man who inquired about renting a room. When she opened the door, two African-American males entered the

[2] At Cortez's request, she was permitted to testify under a pseudonym.

building, displayed a gun, and demanded money. Cortez took them to the manager's office, but they were unable to open the safes with any of the keys available in the office. The men then asked for Cortez's money, and she took them to the laundry room where she kept her belongings. The men took her wallet, phone, watch, and hotel keys.

While in the laundry room, one of the men, whom she identified as "the mean one," ordered her to undress, which she did. While undressed, the man she identified as "the nice one" pressed his body up against hers and asked, "[C]an you feel me?" The mean one left with Cortez's hotel keys while the nice one held her in the laundry room for an extended period of time. During that time, the nice one touched several parts of Cortez's body, including her buttocks, abdomen, and thigh, and made sexually suggestive comments to her. At some point, Cortez offered the man a bottle of water to drink, and he drank from the bottle. After checking the hallway several times for his accomplice, the nice one left.

Meanwhile, the mean one used Cortez's master key to gain entry to a nearby room occupied by hotel guests Hoon Lee and his wife, Jane Peoples.[3] The intruder threatened Hoon Lee and Peoples with a gun, stole Hoon Lee's personal property, and ordered Peoples to strip, which she refused to do. He then touched Peoples's pubic area and thigh suggestively. The stolen property included Hoon Lee's wedding ring, wallet with approximately $50 in Korean currency, backpack, laptop, external hard drive, camera, two cell phones, and student visa and passport. Hoon Lee also gave the assailant the PIN for a debit or credit card in Lee's wallet.

---

[3] At Peoples's request, she was permitted to testify under a pseudonym.

Peoples and Hoon Lee were unable to identify their assailants aside from identifying them as African-American males. Cortez was also unable to identify the assailants, but she testified that the man who held her in the laundry room and touched her had a tattoo on the back of his hand and the numbers "713" on his neck. Appellant was shown to have a tattoo on his hand and the numbers "713" tattooed on his neck. In addition, crime scene investigators extracted DNA that Cortez's captor left on the water bottle, and appellant was matched to the DNA with scientifically significant probability.[4] Appellant also could not be excluded as a contributor of DNA that was extracted from Cortez's body by a sexual assault nurse examiner. Other suspects identified by police and defense counsel were excluded as contributors of the DNA.

In addition to the foregoing forensic evidence, an individual resembling appellant was seen on video at a convenience store around the time someone used Hoon Lee's stolen credit card. The stolen Homewood Suites lock box and some of Hoon Lee's stolen property were found in an apartment where appellant sometimes stayed with his girlfriend. Appellant's DNA was also found on clothing in the apartment. A resident of that apartment, Ebony Adams, testified that appellant attempted to sell her Hoon Lee's laptop. Another witness, Ronald Jones, testified that he obtained Hoon Lee's wallet from appellant and used the identification to fraudulently obtain money from Hoon Lee's bank account. Jones's accomplice in that theft, Jason Smith, testified similarly. Due to the passage of time and having only a passing acquaintanceship with appellant in the first instance,

---

[4] The State's DNA witness testified that "[t]he probability of selecting an unrelated person at random who could be the source of a major component in the DNA profile is approximately 1 in 181.3 quintillion for Caucasian, 1 in 7.905 quintillion for blacks and 1 in 1.271 sectillion [sic] for Hispanics. So based on those probabilities Damien Bell is the source or major component of that [DNA profile] excluding identical siblings."

5

Smith could not affirmatively identify him as the person who gave him the wallet, but he testified that he got the wallet from a person he knew as "D-Boy." Other witnesses affirmatively identified appellant as "D-Boy."

After photographs of the suspects in the January 6, 2010, robberies were made public, Garcia, who had returned to work at the Homewood Suites shortly before the second robbery, went online to a news website to see if she could identify either of the suspects in connection with the first Homewood Suites robbery. She testified that she immediately recognized appellant as the robber who had held the gun to her head, but she did not recognize the other suspect. Garcia reported her findings to the police.

A grand jury returned multiple indictments against appellant in connection with the hotel robberies. The state proceeded on five of the indictments, which were consolidated into a single trial and tried as a single criminal episode. At trial, only Cortez was able to positively identify appellant as her assailant, and the trial court overruled defense counsel's objection that Cortez's identification was tainted by having viewed appellant's photograph in an improperly suggestive manner. It was further revealed at trial that a man named Courtney Hall confessed to participating in the robberies, and defense counsel attempted to establish that Cortez was confusing appellant with an associate of his named Michael Moody, with whom he apparently bears a resemblance. Both of these individuals were excluded as contributors to the DNA found at the scene of the Extended Stay America robbery. Ultimately, the jury found appellant guilty of (1) aggravated kidnapping of Jane Peoples, (2) burglary of a habitation with respect to Hoon Lee, (3) aggravated kidnapping of Cortez, (4) aggravated robbery of Cortez, (5) aggravated robbery of Low, and (6) aggravated robbery of

6

Garcia. The judge imposed concurrent sentences of sixty years in prison for each offense.[5] Appellant's motion for new trial was overruled by operation of law, and this appeal followed.

**DISCUSSION**

*Extended Stay America Robbery*

As to the Extended Stay America robbery, appellant was convicted of aggravated kidnapping of Peoples, burglary of a habitation with respect to Hoon Lee, and aggravated kidnapping and aggravated robbery of Cortez. The only issue raised on appeal relates to appellant's conviction for aggravated kidnapping of Peoples. Appellant's appointed appellate counsel has filed motions to withdraw as counsel with regard to the judgments of conviction relating to the crimes against Hoon Lee and Cortez. We will address these matters in turn.

Appellant was convicted of intentionally and knowingly committing aggravated kidnapping by "secreting or holding [Jane Peoples] in a place where she was not likely to be found, with the intent to violate or abuse her sexually." *See id.* § 20.04(a)(4). The physical evidence admitted at trial established that appellant was in the laundry room with Cortez at the time his cohort detained Peoples and sexually abused her. However, as stated in section 7.02 of the Penal Code, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02 (West 2011). "In order to convict

---

[5]All of the convictions were first degree felonies, with a sentencing range of five to ninety-nine years in prison or life imprisonment, and the judge further found that appellant had a prior felony conviction, which enhanced the minimum sentence to fifteen years but did not affect the maximum sentence available for the crimes. *See* Tex. Penal Code Ann. §§ 12.32, .42 (West 2011).

a defendant as a party to an aggravated offense, the State must prove that the defendant was criminally responsible for the aggravating element." *Wooden v. State*, 101 S.W.3d 542, 547–48 (Tex. App.—Fort Worth 2003, pet. ref'd); *see also Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986) ("[T]o sustain the conviction [for aggravated rape as a principal or a party] there must be sufficient evidence that appellant was criminally responsible for the aggravating element . . . .").

In the present case, the crime of kidnapping was enhanced by the perpetrator's intent to violate or abuse Peoples sexually. *Compare* Tex. Penal Code Ann. § 20.04(a)(4) (aggravated kidnapping) *with id.* § 20.03(a) (West 2011) (kidnapping). Appellant contends that the evidence is insufficient to support a finding that he was criminally responsible for the aggravating element because (1) he was not physically present in the room and did not know what was happening in the room, and (2) the purpose of the criminal conspiracy was burglary and robbery, not sexual assault. In other words, appellant contends that the evidence is insufficient to establish that he solicited, encouraged, directed, aided, or attempted to aid his accomplice in committing the kidnapping *with the intent to violate or sexually abuse Peoples*.

When reviewing the sufficiency of the evidence to sustain a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The sufficiency of the evidence is

determined from the cumulative effect of all the evidence; each fact in isolation need not establish the accused's guilt. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995), *overruled on other grounds by Warner v. State*, 245 S.W.3d 458, 463 (Tex. Crim. App. 2008). The jury is free to reject or accept any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.). The reviewing court may impinge on the trier of fact's discretion only to the extent necessary to guarantee the fundamental protection of due process of law. *Jackson*, 443 U.S. at 319.

"Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). "'In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Party status may be established by circumstantial evidence, *id.*, but the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990); *Brooks v. State*, 580 S.W.2d 825, 831 (Tex.

9

Crim. App. 1979) (citing *Robinson v. State*, 493 S.W.2d 780, 782 (Tex. Crim. App. 1973)). Although mere presence does not make one a party to a crime, it can be a circumstance supporting a party-status finding when considered with other facts tending to establish party status. *See Davis v. State*, 195 S.W.3d 311, 320 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Conversely, the State need not always establish that the defendant was present at the scene of the crime. *Morrison v. State*, 608 S.W.2d 233, 234 (Tex. Crim. App. 1980) ("The State failed to place appellant at the scene of the crime; however, such is not necessary in every case." (citing *Cross v. State*, 550 S.W.2d 61, 63 (Tex. Crim. App. 1977)). "'Moreover, the cumulative force of all the incriminating circumstances may be sufficient to warrant a finding of guilt.'" *Id.* (quoting *King v. State*, 17 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).

We hold that the evidence adduced at trial is sufficient to support the jury's finding that appellant is criminally responsible for the aggravated kidnapping of Peoples. Although not present in the hotel room, appellant was present at the hotel in general with the purpose of robbing the hotel and its guests. The evidence establishes that appellant and his accomplice had an understanding and common design to commit the offense of robbery and aggravated kidnapping in connection with Cortez. Both perpetrators detained Cortez in the laundry room, appellant's accomplice ordered her to undress, and appellant sexually abused her. With appellant's knowledge, his accomplice took Cortez's key and asked her to identify which one was the master key. The jury could reasonably infer that appellant knew his accomplice intended to use that key to access hotel rooms, which were likely occupied with sleeping guests due to the lateness of the hour. In addition, the jury could reasonably infer that his accomplice intended to detain or restrain the liberty of the

10

occupants of the hotel rooms for the purpose of robbing them, as they had done with Cortez. Appellant facilitated his doing so by detaining Cortez and acting as a lookout in the hallway. Once in Hoon Lee and Peoples's hotel room, appellant's accomplice acted in the same manner that he had with Cortez by ordering Peoples to take off her clothes. He then touched her in a sexual manner while appellant was engaging in the same activity with Cortez. The actions of appellant and his accomplice before and during the commission of the aggravated kidnapping of Peoples is sufficient to allow a jury to conclude that they had an understanding and common design in committing the offense. We overrule appellant's evidence-sufficiency challenge to the charge of aggravated kidnapping of Peoples.

With respect to appellant's convictions for his crimes against Hoon Lee and Cortez, his court-appointed appellate counsel has filed motions to withdraw as counsel, stating that the appeals of those convictions are frivolous and without merit. The motions are supported by briefs that meet the requirements of *Anders v. California*, 386 U.S. 738, 744 (1967), by presenting a professional evaluation of the record that demonstrates why there are no arguable grounds to be advanced. *See also Penson v. Ohio*, 488 U.S. 75 (1988); *High v. State*, 573 S.W.2d 807 (Tex. Crim. App.1978); *Currie v. State*, 516 S.W.2d 684 (Tex. Crim. App. 1974); *Jackson v. State*, 485 S.W.2d 553 (Tex. Crim. App.1972); *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App.1969). Appellant was served copies of counsel's briefs and was advised of his right to examine the appellate record and to file pro se briefs as to those judgments. *See Anders*, 386 U.S. at 744. No pro se brief or other written response has been filed.

We have reviewed the record, including appellate counsel's briefs, and find no reversible error as to appellant's convictions for burglary of a habitation with respect to Hoon Lee and aggravated kidnapping and aggravated robbery of Cortez. *See Garner v. State*, 300 S.W.3d 763, 766 (Tex. Crim. App. 2009); *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005). We agree with counsel that the appeals are frivolous with regard to those judgments and grant counsel's motions to withdraw.

### *Homewood Suites Robberies*

As to the Homewood Suites robberies, appellant contends on appeal that (1) the evidence is insufficient to support his conviction for aggravated robbery of Low and (2) Garcia's in-court identification of appellant as her assailant should have been excluded because it was tainted by her prior review of a photograph in which appellant was identified by news media as a suspect in the January 6, 2010, robberies. For the reasons that follow, we overrule appellant's appellate issues.

The jury convicted appellant of aggravated robbery by intentionally or knowingly threatening or placing Low in fear of imminent bodily injury by exhibiting a deadly weapon in the course of committing theft of property with the intent to obtain or maintain control of said property. *See* Tex. Penal Code Ann. § 29.03–.04 (West 2011). Appellant contends that there is insufficient evidence that he was the perpetrator of the January 6, 2010, robbery of the Homewood Suites hotel because (1) Low was unable to identify appellant as his assailant, (2) Low was unable to give a description of uniquely identifying physical characteristics of his assailant, (3) Low did not describe any tattoos on his assailant, including those on the assailants' uncovered hands and eyes, and appellant has tattoos in both places, and (4) no physical evidence places appellant at the scene of the

12

crime. Although appellant concedes that the safe and lock box stolen from the Homewood Suites hotel on January 6, 2010, were found in appellant's girlfriend's apartment along with property stolen from the Extended Stay America robbery and clothing bearing his DNA, he contends that he could only be convicted for possession of stolen property based on that evidence, not aggravated robbery.

Applying the evidence-sufficiency standard articulated above, we conclude that the jury could have found beyond a reasonable doubt that appellant committed aggravated robbery of Low. Three days after the January 6 robberies, the stolen safe and lock box were found in the same apartment with property stolen from Hoon Lee the same morning from a hotel in the same area where the perpetrators—two African-American men—utilized a similar modus operandi. Appellant was tied by the testimony of several witnesses to the apartment in which the property stolen from Hoon Lee was found. His DNA was also found on clothing in the apartment. Three different witnesses placed Hoon Lee's stolen property in appellant's hands. *See Hardesty v. State*, 656 S.W.2d 73, 76– 77 (Tex. Crim. App. 1983) (unexplained possession of recently stolen property permits inference of guilt for offense of theft); *cf. Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006) (exclusive, unexplained possession of recently stolen items and pawning of property close to burgled home were sufficient to support burglary-of-habitation conviction). Appellant was also tied to the robbery at the Extended Stay America hotel by DNA evidence. Based on the totality of the circumstances—including the temporal and physical proximity of the Homewood Suites and Extended Stay America robberies, the similarity in modus operandi and descriptions of the perpetrators, and the recovery of recently stolen property from both crimes at the same location to which appellant had access—the evidence is sufficient to support the jury's finding that appellant

was the perpetrator of the crimes, even without considering Garcia's identification of him as her assailant in the prior Homewood Suites robbery. As described below, however, we also hold that Garcia's identification was properly admitted and further supports the jury's determination that appellant committed the July 6, 2009, Homewood Suites robbery.

At trial, Garcia unequivocally identified appellant as one of the men who robbed her at gunpoint on December 6, 2009. Before Garcia was permitted to make that identification in the jury's presence, however, defense counsel objected that her independent recollection and identification was tainted by having previously viewed a photograph identifying appellant as a suspect in the January 6, 2010, robberies. Garcia was then questioned outside the jury's presence regarding the circumstances in which she obtained the photograph. Garcia testified that shortly after returning to work at the Homewood Suites hotel in January 2010, she learned from a co-worker that the hotel had been robbed again and that the police had identified potential suspects in the crime. She used the Internet to look for photographs of the suspects on a local news website and, upon viewing photographs of two suspects, immediately recognized appellant as one of the December 6, 2009, robbers. She did not recognize the other suspect. Garcia then went to the police department to make an identification, and a photo array was prepared for identification purposes. When Garcia informed the police that she had already identified one of the perpetrators from a photo on the Internet, the police concluded that the array was unnecessary and instead printed the photograph from the website Garcia had identified. Garcia verified her identification in writing on the photograph. During questioning, she stated that she was "500 percent positive" that appellant was one of the perpetrators and that her recollection was independent of the photograph on the Internet and any

photographs she may have seen from the police. The trial court overruled defense counsel's objection, and Garcia was permitted to identify appellant as one of her assailants in the jury's presence.

Following Garcia's in-court identification of appellant, defense counsel vigorously cross-examined Garcia about the circumstances surrounding her out-of-court identification of appellant. She said that she instantly—and with certainty—recognized appellant as the assailant who held her at gunpoint, but she had never been able to identify the second perpetrator from either the photograph on the news website or photographs the police had shown her. He further questioned the validity of her identification based on the fact that the description she had given police on the night of the robbery was an incomplete match for appellant. Specifically, Garcia only noticed tattoos on the perpetrator's neck, while appellant also has tattoos on his hand and face. Counsel suggested that, if the actual perpetrator had such tattoos, Garcia would have noticed them in the 15 to 20 minutes she was being held, especially given the amount of attention she had paid to other details, including the bullets in the gun chamber and the color of the assailants' shoes. Garcia explained that she tried to pay attention to as many details as she could, but was mostly focused on the gun pointed at her. She further explained that she noticed the perpetrators' shoes because they forced her to lie on the floor in a separate room while they searched for keys to the safe and she could see their shoes through the crack under the door when they periodically walked by. Defense counsel then showed Garcia a photograph of a man named Michael Moody, who apparently resembles appellant, and asked her if he was actually the man who had robbed her. Garcia remained steadfast that appellant

15

had been the assailant who held her at gunpoint, but she said she recognized Moody as the second perpetrator.

On appeal, appellant asserts that Garcia's identification was unreliable and should have been excluded by the court under the balancing test articulated in *Neil v. Biggers*, 409 U.S. 188 (1972). However, in *Perry v. New Hampshire*, _____ U.S. _____, 132 S. Ct. 716 (Jan. 11, 2012), the Supreme Court recently clarified that the due process concerns addressed by the *Biggers* balancing test are implicated only when eyewitness identification is tainted *by police arrangement*. *See generally id.* at 724-28. In the present case, law enforcement officials did not arrange the circumstances surrounding Garcia's identification of appellant. Garcia independently, and of her own accord, searched for photographs of the suspects on the Internet. Even assuming the suspects' photographs were improperly released by police, which is neither argued nor apparent from the record, this is not a case involving state action as contemplated by *Biggers*. Indeed, in *Perry*, the Supreme Court indicated that similar circumstances that could be viewed as "suggestive" would not be subject to reliability screening under the *Biggers* balancing test:

> Perry maintains that the Court can limit the due process check he proposes to identifications made under "suggestive circumstances." Tr. of Oral Arg. 11–14. Even if we could rationally distinguish suggestiveness from other factors bearing on the reliability of eyewitness evidence, Perry's limitation would still involve trial courts, routinely, in preliminary examinations. Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do. Out-of-court identifications volunteered by witnesses are also likely to involve suggestive circumstances. For example, suppose a witness identifies the defendant to police officers after seeing a photograph of the defendant in the press captioned "theft suspect," or hearing a radio report implicating the defendant in the crime. Or suppose the witness knew that the defendant ran with the wrong crowd and saw him on the day and in the vicinity of the crime. Any of these circumstances might have "suggested" to the witness that the defendant was the person the witness observed committing the crime.

*Id.* at 727-28. Nevertheless, the Court observed that "the potential unreliability of a type of evidence does not render its introduction at the defendant's trial fundamentally unfair." *Id*. at 728. The Court therefore concluded that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.* The Court held that, when no improper law enforcement activity is involved, "it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 721; *see also id.* at 728-29.

Several of the safeguards noted in *Perry* were utilized in this case—vigorous cross-examination, protective rules of evidence via examination of Garcia outside the jury's presence, and the requirement in the jury charge that appellant's guilt be established beyond a reasonable doubt. There was no post-indictment line-up, and a jury instruction on the fallibility of eyewitness identification was not requested. In addition to these factors, we note that Garcia saw her assailants for a considerable period of time under adequate light, provided police with a relatively detailed description of her assailants—including tattoos on the neck of the one wielding a gun, was certain of her identification of appellant, and was not so swayed by viewing the suspects' photographs that she ever identified the photograph of the second suspect as one of her assailants. Based on the safeguards employed and our *de novo* review of the totality of the circumstances, we conclude that the trial court did not err in allowing Garcia's testimony identifying appellant as one

17

of her assailants.  *Cf. Gamboa v. State*, 296 S.W.3d 574 (Tex. Crim. App. 2009) (applying *de novo* standard of review to trial court's ruling on how suggestiveness of pre-trial photo array may have influenced in-court identification under *Biggers* balancing test).

**CONCLUSION**

For the reasons stated, we affirm the judgments of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   August 28, 2012

Do Not Publish