

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00162-CR

_____

JAMES SCHWING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 207th District Court
Comal County, Texas
Trial Court No. CR2014-385

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A jury convicted James Schwing of possessing less than one gram of methamphetamine. After the jury found that the State's six enhancement allegations were "true," Schwing was sentenced to eighteen years' imprisonment and ordered to pay an $1,800.00 fine. On appeal,[1] Schwing argues that his counsel rendered ineffective assistance during the punishment phase of his trial by failing to timely object to the admission of unadjudicated extraneous offenses and prior bad acts and by failing to object to the prosecutor's comments involving parole. Schwing also argues, and the State concedes, that the trial court's judgment should be modified to correctly reflect Schwing's pleas with respect to the State's enhancement allegations.

We modify the trial court's judgment, so that it reflects that Schwing pled not true to all but the second of the State's enhancement allegations, and affirm the judgment as modified because (1) Schwing has failed to demonstrate the claimed ineffective assistance of counsel, yet, (2) the trial court's judgment must be modified to reflect the trial proceedings accurately.

*(1)    Schwing Has Failed To Demonstrate the Claimed Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, an appellant must establish by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the appellant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The first *Strickland* prong requires a demonstration that trial counsel's performance failed to meet an objective standard of reasonableness under prevailing

---

[1]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

professional norms.  *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307.  The second, prejudice, prong requires a showing of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different but for the deficient performance under the first prong.  *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308.  Failure to establish either prong defeats the claim.  *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

We review trial counsel's representation in a highly deferential manner and presume that such representation was within a wide range of reasonable legal assistance.  *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)).  "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

"Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."  *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

We conclude that counsel's failure to object to extraneous offenses was not deficient and that his failure to object to the State's comments concerning the effects of parole law was not prejudicial.

First, we address Schwing's appellate complaints concerning his counsel's failure to object to the extraneous offenses.

3

In the indictment, the State alleged that Schwing had been convicted in California for the following felony offenses: (1) forgery—processing completed paper, (2) assault with a firearm, (3) "carry dirk or dagger," (4) petty theft with a prior conviction, and (5) two counts of burglary. During the punishment phase of the trial, the State introduced each California conviction into evidence, along with documents demonstrating that Schwing pled guilty to each prior offense. The State's evidence with respect to the enhancement allegations also contained indictments and plea paperwork that referenced other unadjudicated offenses. The State also introduced a chronological history of Schwing's parole revocations and suspensions describing other prior bad acts committed by Schwing. Counsel made various objections to the introduction of the State's exhibits, but did not argue that they referenced unadjudicated offenses and prior bad acts. Schwing alleges that counsel's failure to do so constituted ineffective assistance because the State failed to prove these unadjudicated offenses and prior bad acts beyond a reasonable doubt.

"[E]vidence of unadjudicated extraneous offenses and prior bad acts is admissible at punishment." *Jaubert v. State*, 74 S.W.3d 1, 3 (Tex. Crim. App. 2002). During the punishment phase in non-capital cases,

> [r]egardless of the plea and whether the punishment be assessed by the judge or jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2015).

4

Schwing appears to argue that his counsel should have objected to the introduction of unadjudicated offenses and prior bad acts because they were not proven beyond a reasonable doubt. Counsel, however, had no such valid objection since the reasonable-doubt finding rests with the jury, once the evidence has been admitted. *See Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.—San Antonio 1999, no pet.). The trial court's admissibility determination turns on whether the extraneous offense is relevant. *Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.).

The purpose of a punishment proceeding is not to prove guilt, but instead to allow a jury to assess punishment in line with the objectives of the Texas Penal Code. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); *see* TEX. PENAL CODE ANN. § 1.02(1) (West 2011). The test for relevancy is much broader during the punishment phase because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range. *See Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (op. on reh'g), *superseded by statute on other grounds*, Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (eff. Sept. 1, 1989) (amended 1990, 1993, 1995, 1996, 1997, 1999, 2001, 2005, 2007, 2011, 2013) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2015)).

> What is "relevant" to the punishment determination is simply that which will assist the fact-finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."

*Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (citations omitted).

5

Thus, even had counsel objected, the threshold determination by the trial court would be, not whether the State had proved the extraneous offense beyond a reasonable doubt, but whether the extraneous offense is relevant and whether sufficient evidence existed from which a jury could find "true" the unadjudicated offense or prior bad act beyond a reasonable doubt. *Arzaga*, 86 S.W.3d at 781; *see Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001).[2]

Herein lies the possible strategy for counsel's failure to raise an objection to the unadjudicated offenses and prior bad acts. While the record does not provide counsel's reasoning for his failure to object, counsel could have determined that the trial court would have been within its discretion if it were to find that the unadjudicated offenses and prior bad acts were relevant to the issue of punishment and were subject to being found "true" beyond a reasonable doubt. Counsel could have also determined that an objection (1) would unnecessarily emphasize the unadjudicated offenses to the jury, (2) would allow the jury to think that Schwing was hiding something, (3) would trigger the production of additional evidence of the unadjudicated offenses through its witness, Detective Ron Womack, who had completed a thorough investigation into Schwing's criminal history, or (4) would cause the State to further question Schwing, who testified during the punishment phase of the trial, on the unadjudicated offenses, thereby further highlighting them for the jury.[3] Because counsel's failure to raise an objection could have been

---

[2] *See Thompson v. State*, 425 S.W.3d 480, 491 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) *McClure v. State*, 269 S.W.3d 114, 118 (Tex. App.—Texarkana 2008, no pet.) (citing *Malpica v. State*, 108 S.W.3d 374, 378–79 (Tex. App.—Tyler 2003, pet. ref'd)); *Wilson v. State*, 15 S.W.3d 544, 548 (Tex. App.—Dallas 1999, pet. ref'd).

[3] The State cross-examined Schwing with respect to unadjudicated offenses for which he was indicted, but did not elicit the details involved or ask Schwing whether he had committed those offenses.

6

part of a rational trial strategy, we find that the first *Strickland* prong has not been met with regard to the extraneous offenses.

We turn, next, to Schwing's complaint that his trial counsel failed to object to the State's comments on the effect of the parole laws. Juries are not to consider how the parole law may apply to the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (West Supp. 2015). Schwing argues that the following excerpt demonstrated that the State made an improper argument involving the application of parole laws and that counsel rendered ineffective assistance by failing to object to the argument:

> Basically, he's been cut break, after break, after break from California.
>
> The other thing that I want you to consider is you heard in his jail letters he thinks he is going to be out in 6 months.[4] So if you look in the charge, I want you-- all to focus on -- it is going to start on page 8. And I will read it for you again.
>
> "Under the law applicable to this case the defendant if sentenced to a term of imprisonment may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner."
>
> "It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole. Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not be eligible for parole until the actual time served, plus good conduct time earned, equals one-quarter of the sentence imposed or 15 years, whichever is less."
>
> So that 15 years there is applicable to all offenses under this. So that's why it is -- 15 -- don't be confused by 15 years. It is 15 years or a quarter of the time,

---

[4]It appears that counsel was referring to a letter that Schwing had written to a friend suggesting that a twenty-year sentence was "only like six months to a year in downtime."

7

whichever is less. So if he was sentenced to 20 years, he would be eligible for parole or a person would be eligible for parole possibly at a quarter of the time, which would be 5 years. It is whichever is less, and then you add good conduct time to that as well.

So continuing on. "Eligibility for parole does not guarantee that parole will be granted. It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment because the application of these laws will depend on prison and parole authorities. You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

What you can learn from reading that is even 20 years doesn't mean 20 years.[5]

Without addressing the first prong,[6] we find that Schwing does not meet the second prong of the *Strickland* test.

To show prejudice, the appellant must also show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Whether the confidence in the outcome of the trial is undermined can turn on evidence adduced at trial because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696; *Ex parte Bryant*, 448 S.W.3d 29, 40 (Tex. Crim. App. 2014).

---

[5]*See Branch v. State*, 335 S.W.3d 893, 907 (Tex. App.—Austin 2011, pet. ref'd).

[6]The argument may not be objectionable at all. *See Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007); *Perrucci v. State*, No. 03-10-00765-CR, 2011 WL 3890390, at *5 (Tex. App.—Austin Aug. 31, 2011, no pet.) (mem. op., not designated for publication).

Schwing pled true to the State's second enhancement allegation involving assault with a firearm. Thus, the punishment range allowable if the jury found any one of the five other enhancement allegations to be true was a term of imprisonment between two and twenty years and a fine of $10,000.00. In fact, the jury found all six of the enhancement allegations true, and it was instructed to consider all the punishment evidence in assessing the punishment. Although the jury found that Schwing was convicted of all six enhancement crimes alleged in the State's indictment—assault with a firearm, forgery, carrying a "dirk or dagger," petty theft with a prior, and two different instances of burglary in the second degree—and was entitled to consider other prior offenses or bad acts if it found them true beyond a reasonable doubt, it did not impose the maximum sentence. Instead, the jury assessed punishment at eighteen years' imprisonment and determined sufficient a fine of $1,800.00, much less than the maximum of $10,000.00.

Although the crime in this case, possession of methamphetamine in an amount of less than one gram, was not a violent crime, the jury heard Schwing's admission that he had committed a violent crime, assault with a firearm. The jury also heard evidence that Schwing had been convicted of six other felonies, as well as evidence linking Schwing to the Aryan Brotherhood gang and demonstrating that Schwing had added more color to one of his Aryan Brotherhood tattoos in the past year. The jury also heard Schwing testify, "I mean this is probably going to make me look worse than I want it to, but if you look at my past in California, I couldn't go more than two months without going to jail. I've been out here for going on five years and this is the first trouble I've really gotten into." Although he claimed to be a changed man, Schwing admitted that he did currently have a drug problem, that he had been addicted to drugs since the age of

thirteen, and that he was associating with a Mexican gang member. In light of Schwing's criminal history, the jury could have also determined that his previous sentences of imprisonment did not sufficiently deter him from committing further crimes. Finally, the jury was properly informed that it could not consider the manner in which parole law would apply to Schwing in assessing punishment.

Based on the strong and redundant enhancement evidence presented in this case, the context of the challenged argument, and the sentence imposed, we find that Schwing has not demonstrated a reasonable probability that his counsel's failure to object to the prosecutor's comments resulted in a different outcome. Thus, we overrule Schwing's point of error.

*(2)     The Trial Court's Judgment Must Be Modified To Reflect the Trial Proceedings Accurately*

Schwing also argues that the trial court's judgment must be modified to correctly reflect his pleas to the State's enhancement allegations. The State agrees.

The judgment erroneously reflects that Schwing pled true to all of the State's enhancement allegations. In fact, Schwing pled true to only the second enhancement allegation and pled "not true" to the remaining five allegations. The State concedes that the judgment's recital is in error.

We have the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment to reflect that Schwing pled true to only the second enhancement allegation.

10

We affirm the judgment, as modified.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 1, 2016
Date Decided:      April 20, 2016

Do Not Publish