PD-0174-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/24/2015 7:06:37 PM
Accepted 3/25/2015 2:56:27 PM
ABEL ACOSTA
CLERK

NO. PD-0174-15

TO THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

CHARLES HENRY JONES
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review of Cause No. 01-13-00984-CR
In the First Court of Appeals, affirming the judgment in Cause Number 1163962
From the 339th District Court of Harris County, Texas
Hon. Maria T. Jackson, Judge Presiding

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

March 25, 2015

ABEL ACOSTA, CLERK

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

CHERI DUNCAN
Assistant Public Defender
Harris County, Texas
Texas Bar No. 06210500
1201 Franklin, 13th floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
cheri.duncan@pdo.hctx.net
COUNSEL FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

Appellant

Charles Henry Jones
TDCJ# 01892757
Stiles Unit, TDCJ
3060 FM 3514
Beaumont, TX 77705

Presiding Judge

Hon. Maria T. Jackson
339th District Court
Harris County, Texas
1201 Franklin, 14th Floor
Houston, Texas 77002

Trial Prosecutor

Donna Logan
Assistant District Attorney
1201 Franklin, 6th Floor
Houston, TX 77002

Defense Counsel at Trial

Danny Easterling
Attorney at Law
1018 Preston, 6th
Houston, TX 77002

Counsel on Appeal for Appellant

Cheri Duncan
Assistant Public Defender
Harris County, Texas
1201 Franklin, 13th floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................................................ii

TABLE OF CONTENTS ...................................................................................................iii

INDEX OF AUTHORITIES ................................................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ................................................................. 1

STATEMENT OF THE CASE ............................................................................................ 1

STATEMENT OF PROCEDURAL HISTORY ......................................................................... 1

QUESTIONS PRESENTED ................................................................................................ 2

QUESTION 1: The state's identity evidence – DNA testing on clothing discarded in a wooded area – did not show the timing, circumstances or degree of contact between Appellant and the complainant. Did the court of appeals err in holding that the evidence was legally sufficient to support a capital murder conviction that arose from a convenience store robbery blocks away from the woods?

QUESTION 2: Did the Court of Appeals err by failing to use the alternate-reasonable-hypothesis analytical construct, after a majority of this Court revived it last year (according to dissenting Judges Alcala and Keller) in *Rabb v. State*?

QUESTION 3: In light of *Trevino v. Thaler*, did the post-*Brooks* "merging" of factual sufficiency and legal sufficiency reviews deprive Appellant of his right to meaningful review of his conviction, as guaranteed by the U.S. Constitution?

REASONS FOR REVIEW ................................................................................................. 2

    A. The evidence .................................................................................................. 2

    B. Where's *Winfrey*? (Question 1) ....................................................................... 3

    C. Does *Rabb* say what the dissent says it says? (Question 2) ............................. 4

D. Isn't it time to bring back pre-*Brooks* review? (Question 3) ............................ 6

PRAYER .............................................................................................................. 7

CERTIFICATE OF SERVICE ................................................................................. 8

CERTIFICATE OF COMPLIANCE ......................................................................... 8

APPENDIX

# INDEX OF AUTHORITIES

**Rules**

TEX. R. APP. PROC. 66.3(c) and (f) ................................................................. 1

**Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ................................... 6

*Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) ................................... 6

*Jones v. State*, __ S.W.3d __, 2015 WL 162216 ................................................ 1, 3

*Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000) ................................... 6

*Rabb v. State*, __ S.W.3d __, 2014 WL 2865698 (Tex. Crim. App. 2014) ....................... 5

*Trevino v. Thaler*, 133 S.Ct. 1911 (2013) ................................................ 7

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013) ................................ 3, 4

**TO THE COURT OF CRIMINAL APPEALS:**

Charles Henry Jones, the appellant, petitions this Court for review and reversal of the judgment of the First Court of Appeals.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful to the Court because the court of appeals has decided an important question of state and federal law – particularly, how to review sufficiency of the evidence – in a way that conflicts with the applicable decisions of this Court. The lower court relied so much on speculation about the facts that its departure from the accepted and usual course of judicial proceedings calls for an exercise of this Court's power of supervision. *See* TEX. R. APP. PROC. 66.3(c) and (f).

## STATEMENT OF THE CASE

A Harris County jury found Mr. Jones guilty of capital murder on October 29, 2013. He received an automatic sentence of life in prison without parole, and the trial court entered judgment against him the same day (C.R. at 485).

## PROCEDURAL HISTORY

Notice of appeal was filed on October 29, 2013 (C.R. at 489).

The First Court of Appeals affirmed Mr. Jones' conviction on January 13, 2015. *Jones v. State*, ___ S.W.3d ___, 2015 WL 162216 (Tex. App. – Houston [1st Dist.], Jan. 13, 2015). No motion for rehearing was filed. This Court granted a motion to extend time to file petition for discretionary review, making the petition due on March 16, 2015. Along with this petition, counsel is filing a second motion to extend.

1

**QUESTION 1**: **The state's identity evidence – DNA testing on clothing discarded in a wooded area – did not show the timing, circumstances or degree of contact between Appellant and the complainant. Did the court of appeals err in holding that the evidence was legally sufficient to support a capital murder conviction that arose from a convenience store robbery blocks away from the woods?**

**QUESTION 2: Did the Court of Appeals err by failing to use the alternate-reasonable-hypothesis analytical construct, after a majority of this Court revived it last year (according to dissenting Judges Alcala and Keller) in *Rabb v. State*?**

**QUESTION 3**: **In light of *Trevino v. Thaler*, did the post-*Brooks* "merging" of factual sufficiency and legal sufficiency reviews deprive Appellant of his right to meaningful review of his conviction, as guaranteed by the U.S. Constitution?**

## REASONS FOR REVIEW

## A. The evidence

Since the sole issue is the insufficiency of the evidence, some facts are necessary to give context to the court of appeals' review. The store robbery from which this case arose occurred in June, 2006. One of the store's owners, Thi Nguyen, was shot and killed in the back of his store during the holdup.

Police found the purported getaway car abandoned in a driveway in a residential neighborhood blocks away from the store. In a wooded area near the residential neighborhood, a police dog located several articles of clothing. Samples from the clothing later were tested for DNA. Although testing could not exclude Appellant as a contributor to some of the DNA samples, he did not match the

descriptions of the robbers given by various witnesses, except for his race. Further, a testifying DNA analyst admitted that he could not say that the DNA was deposited on the clothing on the day of this incident. None of the state's witnesses – civilians and police included – could identify Appellant in court.

Because no one and nothing could prove that Mr. Jones was in the store or that he had any contact with Mr. Nguyen, the jury ultimately had to rely on speculation to find him guilty. The court of appeals engaged in the same type of speculation to affirm. The court concluded that "(i)t was reasonable for the jury to infer … that appellant and Nguyen were the major contributors to the DNA profiles on the pants and one of the gloves because appellant was wearing the pants and the glove when he shot Nguyen." *Jones*, 2015 WL 162216 at *5.

## B.    Where's *Winfrey*?[1] (Question 1)

One of the investigating police officers agreed that there was not "a scintilla of evidence from inside the store" to tie Appellant to the robbery or murder. In the lack of facts to support an inference that Appellant participated in the crime, this case is remarkably similar to *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013). As in *Winfrey*, the state's identity evidence did not establish the "timing, circumstances, or degree of contact" between the defendant and the complainant. *Id.* at 768.

Given this uncanny similarity, one would expect that *Winfrey* would have guided the court of appeals' review. In fact, Appellant cited it more often than any other case

---

[1] With apologies to Waldo.

in his brief. So where did the lower court discuss *Winfrey*? Nowhere. It chose to deal with this key precedent by just ignoring it.

Like the dog-sniff evidence in *Winfrey*, the DNA evidence in this case simply indicates that Appellant and Mr. Nguyen each may have had some contact with the abandoned clothing, although the timing, circumstances, and degree of that contact cannot be determined.[2] Similarly, the "timing, circumstances, and degree of contact" between Mr. Jones and the pants and glove found in the woods cannot be determined, as the state's witnesses admitted.

Even fairy tales require more evidence than this. *See, e.g., Cinderella* (handsome prince sees mysterious princess drop glass slipper as she flees scene, conducts door-to-door search to find her). If the prince had not *seen* Cinderella drop the glass slipper, there would have been no happy ending, just a guy holding a pretty shoe. Here, no eyewitnesses saw Mr. Jones, and he did not match their descriptions, except for his race. The abandoned clothes could not prove his guilt. The court of appeals erred in ignoring *Winfrey* to rule that the evidence was legally sufficient to support Appellant's conviction.

## C.    Does *Rabb* say what the dissent says it says? (Question 2)

At trial, the defense offered a perfectly rational explanation for how DNA similar to Mr. Jones' profile might have wound up on some of the clothing in the

---

[2] The DNA samples that could not exclude Mr. Nguyen were taken from what appeared to be dried blood, so they could reasonably be inferred to be connected to his murder, but not to whomever committed the murder.

woods. Mr. Jones' brother, Larry Jones, testified that earlier in June of 2006 (the same month as this incident, Charles Jones' car had been burglarized. Larry had given the car to his brother, so he came to assess the damage. An expensive set of speakers was stolen from the car, and the interior and trunk were ransacked. He agreed that his brother might have had clothing in the ransacked car.

In a tampering case last year, a majority of this Court noted that while it was possible that the evidence (a baggie of pills) was destroyed when the appellant swallowed it, it was just as possible that it was not. *Rabb v. State*, __ S.W.3d __, 2014 WL 2865698 *4 (Tex. Crim. App. June 25, 2014). The Court therefore affirmed the lower court's reversal of a conviction on the charged offense of tampering with physical evidence by destroying it.

In a spirited dissent, Judge Alcala (joined by Chief Judge Keller) said the majority "circumvent(ed) the fact-finder's decision, calling it irrational, and, in the process, resurrect(ed) the long-dead reasonable-alternative-hypothesis analysis …" *Id.* at *6. The dissent disagreed "with the majority opinion's focus on circumstances that might be consistent with appellant's innocence, when it should instead focus on whether the fact-finder could rationally have found appellant guilty." *Id.* at *9.

Whether one characterizes *Rabb* as a revival of the reasonable-alternative-hypothesis analytical construct or not, the court of appeals failed to apply *Rabb's* analysis in this case. Where there was *no* evidence that Mr. Jones had ever in his life been in that store or knew the Nguyens, and there *was* evidence that Mr. Jones'

clothing had been stolen before the store robbery, a rational finder of fact could not conclude beyond a reasonable doubt that Mr. Jones shot Mr. Nguyen or was a party to the murder. Therefore, the court of appeals misapplied well-established law.

The Court should grant review and clarify whether, in fact, lower courts once again are to conduct a reasonable-alternative-hypothesis analysis. It makes sense; if evidence supports an inference other than guilt, then a finding of guilt beyond a reasonable doubt is not a rational finding. *See Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991). This is why *Geesa* kept the analytical construct for appellate review while rejecting it as a jury instruction and substituting a reasonable doubt instruction instead. Later, when the Court overruled *Geesa's* requirement of a reasonable doubt instruction, it was silent on the status of reasonable-alternative-hypothesis review. *See Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). Now that the Court also has abolished factual sufficiency review (*see Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)), it is time to clarify that in sufficiency-of-the-evidence appeals, the lower courts should consider whether the evidence supports an inference other than guilt if it is at least as reasonable as an inference of guilt.

## D. Isn't it time to bring back pre-*Brooks* review? (Question 3)

The appellate courts' current difficulty in sorting out what constitutes speculation from what constitutes a reasonable inference could be resolved in many cases by reinstating factual sufficiency review. Without it, and without the use of the reasonable-alternative-hypothesis analytical construct, the lower courts will continue

6

to deny meaningful review to insufficient evidence claims. This amounts to structural constitutional error. *See Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013).

The court of appeals declined to conduct a factual sufficiency review. If it had done so, it would have been compelled to reverse Mr. Jones' conviction. This is because, viewing all the evidence in a neutral light, no rational jury could have found beyond a reasonable doubt that Mr. Jones participated in the robbery of the Nguyens' store and shot – or was a party to the shooting of – Mr. Nguyen. The evidence was factually insufficient to support the conviction.

## PRAYER

For these reasons, Mr. Jones prays this Court to grant his petition, and upon review, to reverse and render judgment of acquittal. Acquittal is the appropriate remedy because the state was wholly unable to prove Mr. Jones' identity and presence at the scene of this offense, and therefore would not be able to prove that he committed any lesser included offense.

Respectfully submitted,

**Alexander Bunin**
Chief Public Defender
Harris County Texas

*/s/ Cheri Duncan*

_____

**Cheri Duncan**
Assistant Public Defender
Harris County Texas
Texas Bar No. 06210500
1201 Franklin, 13th floor

7

Houston Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
cheri.duncan@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this brief was served to the Harris County District Attorney and the State Prosecuting Attorney by electronic service on March 24, 2015.

*/s/ Cheri Duncan*

_____

Cheri Duncan

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Rule 9.2, TEX. R. APP. PROC. It was prepared on a computer using 14-point Garamond type. It contains 1,503 words, excluding certain sections according to Rule 9.

*/s/ Cheri Duncan*

_____

Cheri Duncan

**Opinion issued January 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00984-CR

————————————

**CHARLES HENRY JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 339th District Court
Harris County, Texas
Trial Court Case No. 1163962

## O P I N I O N

A jury convicted appellant, Charles Henry Jones, of capital murder.[1]

Because the State did not seek the death penalty, the trial court automatically

---

[1]     *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2014) (providing that person commits offense of capital murder if he intentionally causes death of individual in course of committing or attempting to commit robbery).

assessed punishment at confinement for life. In two issues, appellant contends that (1) the State failed to present sufficient evidence that he committed the underlying robbery; and (2) without this Court's conducting a factual sufficiency review of the evidence, he is "deprived of his right to meaningful review of his conviction."

We affirm.

## Background

Dung Nguyen and her husband, Thi Nguyen, the complainant, owned the Happy Food Store located in northwest Houston. On the morning of June 15, 2006, the Nguyens and their eleven-year-old son were all present in the store. Dung was standing behind the glass partition encasing the cash register, Thi was restocking beer, and their son was watching television. Through the window, Dung saw a white car pull up and two black men get out and walk into the store, a man who seemed tall to Dung and a man several inches shorter. Both men wore dark clothing and latex gloves, and the shorter of the men also wore a stocking over his face. The taller of the men held a gun and wore a long black wig.

The shorter of the men pushed Dung down on the floor and demanded to know where she kept the store's money. The taller of the men confronted Thi by the store's coolers, which were out of sight from the cash register. While Dung was trying to gather money, she heard two gunshots. The men stole several

2

hundred dollars and several boxes of cigarettes before fleeing the store. Thi died at the scene.

Dung acknowledged that police officers showed her a photo-array approximately one-and-a-half months after the shooting and that she was unable to identify anyone in the photo-array as one of the robbers. Dung did not identify appellant in court as one of the robbers.

Quoc Nguyen worked as a mechanic at the Quick Tune located across the street from the Happy Food Store. On June 15, 2006, he and one of his co-workers were working on a car when the Nguyens' son ran out of the Happy Food Store and told Quoc and his co-worker that the store had been robbed, that two men were still in the store, and that one of the men had a gun. Quoc saw two black men wearing dark clothing run out of the Happy Food Store and get into a white Acura Integra that had no license plates and drive away. Quoc and one of his co-workers got in their own car and followed the Integra until it stopped at a nearby house. He saw the passenger in the vehicle get out and run either into the house or to the side of the house. Quoc called 9-1-1 and reported the incident. Quoc and his co-worker waited down the street from the house for about thirty minutes before police arrived at the scene.

On cross-examination, Quoc testified that the driver of the car was not wearing gloves and that the passenger wore black gloves. He stated that the

3

passenger wore either a bandana or a ski mask, and he could not tell whether the passenger had long hair or not. Quoc could not remember whether the men were light or dark skinned. Quoc agreed that he never got a good look at the faces of the men and that he was never able to identify the robbers.

Venissa Rogers testified that she was in Houston visiting her aunt on June 15, 2006. Rogers' aunt had opened her front door, and while Rogers was sitting on her aunt's sofa she heard squealing tires outside. Rogers ran to the door and saw a white car "pull in real fast at a house" across the street and about three houses over from her aunt's house. She saw two young black men jump out of the car. Rogers was closer to the passenger side of the car, and she saw the passenger, once he got out of the car, "mak[e] motions of pulling off clothing." Rogers saw the passenger, who also had something over his face, pull off a pair of gloves. Rogers testified that both men ran by the side of the house towards a bayou behind the house. She also stated that another car pulled up, and the occupants of that car—Quoc Nguyen and his co-worker—watched the men abandon the white car. Once police arrived after Quoc called 9-1-1, Rogers relayed what she had seen. Rogers testified that because the men had worn something covering their faces she could not identify either of them.

Former Houston Police Department ("HPD") K-9 Officer D. Thomas testified that, after the first officers arrived at the house near the Happy Food Store,

4

he and his dog, Rudy, were dispatched to the house. One of the officers who had helped secure the scene informed Officer Thomas that a baseball cap had been located along a small bayou behind the house, and Thomas took Rudy to that location in an attempt to track the suspects' movements. While tracking, Officer Thomas and Rudy discovered a black T-shirt in a culvert near the house. Rudy then tracked to some clothing, a wig that had an orange hair tie in it, and some latex gloves[2] in close proximity to one another in the woods on the other side of the bayou from the house. These clothes did not look as though they had been sitting in the woods for a lengthy period of time. While near the location where he and Rudy had discovered the clothing, Officer Thomas spoke with a man who informed him that he had seen two men in the woods who looked as if they were changing clothing but who ran off when a police helicopter circled overhead.

HPD Sergeant W. Booth, one of the homicide detectives assigned to the case, stated that the officers showed several of the items recovered from the woods, including the wig, on television in the hope that someone might come forward with further information. Sergeant Booth spoke with Kendra Bonner, who saw the television broadcast and recognized the wig and, specifically, the hair tie in the wig. Sergeant Booth testified that he and his partner subsequently developed Kevin Chaney and a man with the nickname of "Dumpling" as suspects in Thi

---

[2]     HPD Sergeant G. West specified that the gloves were found inside out.

5

Nguyen's murder. Sergeant Booth stated that, during the investigation, he determined that "Dumpling" was appellant and that appellant and Chaney were connected in that both had children with the same woman. Sergeant Booth also testified that appellant is several inches taller than Chaney.

Clay Davis, a DNA analyst with the HPD crime lab, conducted DNA testing on several pieces of evidence in this case, including swabs from a baseball cap, a work shirt, a stocking, two pairs of pants, and three latex gloves. Davis testified that, after comparing appellant's known DNA profile to the DNA profile obtained from a work shirt found by Officer Thomas in the woods, appellant could not be excluded as a contributor to the profile on the shirt and that the probability that an unrelated individual could be a possible DNA contributor was 1 in 1.5 quintillion for African Americans. Appellant also could not be excluded as a contributor to the DNA mixture found on the baseball cap, although the probability that an unrelated individual could be a contributor for that piece of evidence was 1 in 78 for African Americans. Appellant also could not be excluded as a contributor to the DNA profile found on the T-shirt, and the probability that an unrelated individual could be a contributor was 1 in 50 trillion for African Americans. Kevin Chaney could not be excluded as a possible contributor to the DNA mixture found on one of the latex gloves and on the stocking.

Davis testified that he tested two cuttings from a pair of pants found in the woods. For one of those cuttings, taken from a leg of the pants, Thi Nguyen could not be excluded as a possible contributor to the DNA profile. Davis also tested a cutting from the waistband of that pair of pants. Appellant could not be excluded as a contributor to that DNA profile, and the probability that an unrelated individual could be a contributor was 1 in 98 quadrillion for African Americans. Thi Nguyen and Kevin Chaney were both excluded as contributors to the DNA profile from the waistband cutting.

Davis also took two swabs from one of the latex gloves, one swab from the outside of the glove and one swab from the inside of the glove. Thi Nguyen could not be excluded as a contributor to the DNA mixture on the outside of the glove, but both appellant and Chaney were excluded as contributors. The swab from the inside of the glove included a mixture of at least three individuals. Appellant could not be excluded as a possible contributor; and the probability that an unrelated individual was the contributor was 1 in 140 billion for African Americans. Thi Nguyen could not be excluded as a possible contributor for that mixture on the inside of the glove, and the probability that an unrelated individual contributed that DNA profile was 1 in 850 for Caucasians. Kevin Chaney could be excluded as a contributor to that mixture. Davis concluded that appellant was the major contributor to that mixture and Thi Nguyen a minor contributor. Davis

acknowledged on cross-examination that DNA analysis cannot determine when a particular DNA profile was deposited on an item. He thus agreed that he could not tell the jury that appellant was wearing the tested items of clothing on June 15, 2006.

Larry Jones, appellant's younger brother, testified on appellant's behalf. Jones testified that he gave appellant a car in early June 2006 and that appellant left the car in Houston while they attended a family reunion in Victoria before the robbery of the Happy Food Store. Jones stated that when he and appellant returned from their reunion they discovered that someone had broken into appellant's car and stolen the stereo system. Jones did not know what else had been taken from appellant's car, but he believed clothes could have been in the car and could have gone missing. Jones acknowledged on cross-examination that appellant's nickname was "Dumpling."

The jury ultimately found appellant guilty of capital murder, and the trial court automatically assessed punishment at confinement for life. This appeal followed.

**Sufficiency of the Evidence**

In his first issue, appellant contends that the State failed to present sufficient evidence that he committed the underlying robbery. In his second issue, appellant

8

argues that this Court should apply factual-sufficiency standards of review when analyzing the sufficiency of the evidence to support his conviction.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the

9

jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B. Capital Murder

To establish that appellant committed the offense of capital murder as charged in the indictment, the State had to prove that appellant, while in the course of committing and attempting to commit the offense of robbery, intentionally caused the death of Thi Nguyen by shooting him with a deadly weapon. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2014); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (noting that State is required

10

to prove beyond reasonable doubt that accused is person who committed charged crime). "[T]he identity of the alleged perpetrator may be proven by circumstantial evidence." *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.)). The State may also establish identity by inferences. *Roberson*, 16 S.W.3d at 167. "For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Id.* (citing *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989)).

Here, Dung Nguyen testified that two black men robbed the Happy Food Store on June 15, 2006, and one of the men shot and killed her husband, Thi Nguyen. Both of the robbers wore latex gloves, and the taller of the two men wore a long, black wig and carried a gun. Quoc Nguyen testified that he saw two black men run out of the Happy Food Store and drive away from the scene in a white Acura Integra. Quoc and one of his co-workers followed the Integra until it pulled into the driveway of a nearby house. Quoc and Venissa Rogers, watching from a few houses down the street, both saw two men get out of the car and run to the side of the house. Both Quoc and Rogers testified that they saw at least one of the men wearing gloves, and Rogers testified that she saw the passenger pulling off his gloves and attempting to remove his clothing.

11

Officer Thomas testified that his dog, Rudy, tracked the scent of the men who had abandoned the Integra to a baseball cap behind the house, to a t-shirt located in a culvert near the bayou that ran behind the house, and to discarded clothing, a long black wig with an orange hair tie, and latex gloves—all located in close proximity to each other in the woods on the other side of the bayou from the house. Officer Thomas spoke with a man who informed him that he saw two men who appeared to have been changing clothes in the woods, but the men ran off when a police helicopter circled overhead. When HPD officers released the information that clothing and a wig had been found, Kendra Bonner informed officers that she recognized the wig and the orange hair tie in the wig. After speaking with Kendra, officers developed Kevin Chaney and a man nicknamed "Dumpling" as suspects. Officers later determined that "Dumpling" was appellant, and appellant's brother, Larry Jones, confirmed that "Dumpling" is appellant's nickname. Chaney and appellant both have children with the same woman, and Chaney is several inches shorter than appellant.

DNA testing revealed that Chaney could not be excluded as the contributor to the DNA profiles found on one of the latex gloves and on the stocking. Appellant could not be excluded as a contributor to the DNA profiles located on the baseball cap, a work shirt, and a t-shirt. DNA analysts also took two cuttings from a pair of pants: one from a pants leg and the other from the waistband of the

12

pants. Thi Nguyen could not be excluded as the contributor to the DNA profile located on the cutting taken from the pants leg, and appellant could not be excluded as a contributor to the DNA profile located on the cutting taken from the waistband. Nguyen and Chaney were both excluded as contributors to the DNA profile on the cutting from the waistband. DNA analysts also took two swabs from a latex glove found in the woods, one from the inside of the glove and one from the outside. The DNA profile taken from the inside of the glove revealed a mixture of contributors, but appellant could not be excluded as the major contributor to that mixture, although Chaney could be excluded. Thi Nguyen could not be excluded as a contributor to the DNA profile from the outside of the glove, and Chaney and appellant could both be excluded as contributors.

The State thus presented evidence connecting appellant to discarded clothing and gloves that also contained the DNA profile of Thi Nguyen, the complainant. As appellant notes, no other testimony established a connection between appellant and Nguyen that could explain how Nguyen's DNA profile ended up on clothing that also contained appellant's DNA profile. Appellant presented testimony from his brother that appellant's car had been burglarized shortly before Nguyen's murder, and his brother testified that it was possible that whomever had stolen the stereo system from appellant's car also took clothing from the car. However, as the State points out, the DNA tests of the clothing and the gloves revealed

13

appellant as the major contributor to the DNA profile, with the exception of the two cuttings in which Thi Nguyen was the major contributor. It was reasonable for the jury to infer, based on the evidence presented, that appellant and Nguyen were the major contributors to the DNA profiles on the pants and one of the latex gloves because appellant was wearing the pants and the glove when he shot Nguyen. *See Roberson*, 16 S.W.3d at 167 (stating that State may establish identity by circumstantial evidence and by inference).

Viewing the evidence in the light most favorable to the verdict, we hold that the State presented sufficient evidence for a reasonable fact finder to conclude beyond a reasonable doubt that appellant was one of the robbers of the Happy Food Store and thus involved in Thi Nguyen's murder.

We overrule appellant's first issue.

### C. Entitlement to Factual Sufficiency Review

In his second issue, appellant argues that, without factual sufficiency review, he is deprived of his constitutional right "to meaningful review of his conviction."

In *Brooks v. State*, the Court of Criminal Appeals concluded that "there is no meaningful distinction between a *Clewis [v. State]* factual sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard" and held that the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense

14

that the State is required to prove beyond a reasonable doubt."  323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  In the four years since *Brooks*, the Court of Criminal Appeals has repeatedly reaffirmed that appellate courts are to apply only the *Jackson* standard in reviewing the sufficiency of the evidence to support a conviction and that courts should not return to applying the factual sufficiency standard.  *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("As the court of appeals properly noted, this Court now applies only one standard 'to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency.'"); *Ex parte Flores*, 387 S.W.3d 626, 641 (Tex. Crim. App. 2012) (noting that court "did away with" factual sufficiency review in *Brooks*); *Adames*, 353 S.W.3d at 859 (holding that *Jackson* standard is only standard for courts to apply in determining sufficiency of evidence).

We decline appellant's invitation to apply pre-*Brooks* factual sufficiency standards to review the sufficiency of the evidence to support his conviction.

We overrule appellant's second issue.

**Conclusion**

We affirm the judgment of the trial court.


                                        Evelyn V. Keyes
                                        Justice

Panel consists of Justices Keyes, Higley, and Brown.

Publish.   TEX. R. APP. P. 47.2(b).

16